In the Matter of Neil Joseph
SCHAEFFER, Debtor.

Bankruptcy No. 1-82-01191.

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 17, 1987.

Paul A. Nemann, Jeffrey P. Harris, Cincinnati, Ohio, for debtor.

E. Hanlin Bavely, E. Ronald Grossheim, Cincinnati, Ohio, for trustee.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 11 case is before the Court pursuant to applications for fees filed by E. Hanlin Bavely, trustee and attorney for the trustee; Porter, Wright, Morris and Arthur, original attorneys for the debtor, Neil J. Schaeffer; and Cohen, Todd, Kite and Stanford, successor attorneys for the debtor. Fees are sought for work performed on a complex suit brought by the trustee seeking to recover amounts allegedly owed the debtor for his services in the syndication of a Dayton, Ohio real estate project known as the Biltmore Project. The settlement of this action, along with a separate state court action brought by Biltmore Tower Associates against Leslie Green and Biltmore, Ltd., resulted in a recovery of some $240,000 for the estate. An additional $99,500 might eventually be recovered if certain contingencies occur in the future. While the precise nature of these contingencies is not important for purposes of this discussion, suffice it to say that the chances of the estate ever realizing this additional amount are remote.

These fee applications were the subject of a hearing held on February 19, 1987. After reviewing the applications and listening to the arguments of counsel, the Court directed the trustee to submit a position letter regarding the fee requests of the debtor's attorneys. The debtor's attorneys were also given an opportunity to provide additional information in support of their requests.

The debtor's personal stake in the Biltmore litigation was significant. He presently owes the Internal Revenue Service over $400,000, and any recovery by the trustee on this suit would be applied to lessen this non-dischargeable debt. While both of the debtor's attorneys assisted the attorney for the trustee in pursuing this suit, it is clear that an adversarial relationship existed between the parties, and that their interests did not coincide. Schaeffer was named as a separate defendant in a third-party complaint filed by Defendant Biltmore, Ltd., and thus had interests to protect separate from those of the trustee. His interest in maximizing the recovery on the trustee's suit also placed him in an adversarial posture with the trustee, as is evident from his challenge to the dollar amount of the trustee's settlement as insufficient.

The fee applications of both of the debtor's attorneys seem to presume that because they aided the trustee in pursuing this litigation, they are entitled to compensation from the estate as a matter of course. As we indicated at the hearing on these applications, such is certainly not the case. The rule under the Bankruptcy Act of 1898 continues to be the rule under the

Code: an attorney for a Chapter 7 debtor is not entitled to compensation from the estate unless the fee application clearly discloses that services were rendered for the benefit of the estate rather than for the debtor personally, and that "the services relate to the debtor's administrative responsibilities and are otherwise not capable of payment by the debtor." *In re Vlachos,* 61 B.R. 473, 482 (Bankr.S.D.Ohio 1986).

To a great degree, neither of the applications of the debtor's attorneys measure up to this standard. While Cohen, Todd's application expressly excludes all time spent in objecting to the settlement proposed by the trustee, the inadequate descriptions of the time entries make it impossible to determine how much time was spent in furtherance of the joint interests of the trustee and the debtor versus time spent representing Schaeffer's separate interests. At least 11 hours of attorney Paul Nemann's time and 11.2 hours of the time spent by his partner, Thomas Bergman, merely note that a telephone call or conference occurred with Schaeffer or others without providing any reference to the subject matter discussed. The remainder of the time entries refer to trial preparation activities, such as reviewing files, preparing for and attending depositions, and preparing for and attending the settlement conference. However, neither the time entries nor counsel's February 23, 1987 submission provides any firm basis for concluding that all of the time was spent solely in furtherance of the interests of the estate. Were the depositions and other discovery for purposes of the third party claims against Schaeffer, or were they for the purpose of aiding the trustee's case? If trial preparation was in fact for the estate's benefit, why did the trustee need debtor's counsel as a "shadow" co-counsel? Was it necessary to have both attend depositions or was this a mere duplication of effort? Neither the time entries nor the supplemental submissions of counsel answer these questions. Bergman's hand-written time sheets suffer from the additional problem of being largely illegible.

Some of the time entries of Porter, Wright, Morris and Arthur are similarly flawed by a lack of description. On the whole, however, they do set forth a more detailed account of how the firm's time was spent. By letter of February 20, 1987 the firm withdrew its request as to time spent preparing an answer to the third-party complaint and reduced its fee request from $3,276.25 to $1805.00. However, as was true of Cohen, Todd's time records, the remaining time entries provide little insight into how much time was devoted to the estate's interests in this litigation as opposed to Schaeffer's personal interests. Porter, Wright's supplemental submission implies that without its assistance in obtaining documents and unravelling transactions, the trustee might have abandoned the action. We have no reason to believe that the trustee would not have pursued the lawsuit without the firm's impetus or that the result would have been significantly different without its involvement. Furthermore, it is unclear whether all of the time encompassed by the amended fee request benefitted the estate. Indeed, the trustee's time sheets indicate that the trustee was investigating the possibility of objecting to the debtor's discharge, and that he communicated with debtor's counsel regarding exemptions he had claimed. We have no way of knowing the extent to which these subjects may have been discussed in the numerous conferences between counsel for the debtor and trustee.

This Court has repeatedly reiterated both to the present applicants and to other members of the bar that:

> ... [A] brief description of the work performed is essential for this Court's evaluation of fees. Time records which merely note that a telephone call took place or that a conference was held will be deemed insufficient. At a minimum, time entries for conferences and telephone calls should identify who was spoken to and specify what was discussed. If research was performed, a description of the research should be given. Time entries for drafting documents should specify the document involved.

*In re Baldwin United Corp.,* 45 B.R. 381, 382 (Bankr.S.D.Ohio 1984).

The task of setting fees is the most difficult and unpleasant responsibility which this Court must perform. Without a complete record of what services were rendered, the Court is literally deprived of the opportunity to be fair in what is inherently an arbitrary process. The issue is one of accountability, not merely to the judge, (who is, more often than not, the only adversary in the fee-setting process) or to the creditors, but to the bankruptcy system as a whole.

Guided by these principles, the closest we can come to a fair fee award for debtor's attorneys is as follows: As for the Cohen, Todd application, the 22.2 hours which we found to be either inadequately described or illegible will be deducted from the $12,295 amount requested. This deduction totals $2660 ($140 × 11 = 1540 + $100 × 11.2 = 1120). The $9635 remaining will be reduced an additional 15% (9635 × .15 = 1445.25) as a discount for time which may have been spent solely to further the debtor's interests. Thus, the total fee allowed is $8,189.75. The request for $21.61 in expenses will be allowed in its entirety.

As for Porter, Wright, we find that its voluntary deduction of over $1400 resolves most of the problems with its application. However, we conclude that an additional 10% deduction from the reduced figure is appropriate to adjust for duplicating the efforts of the trustee and for time spent which primarily benefitted Schaeffer. Accordingly, the total fee award to the firm is $1624.50. The $21.61 in expenses will also be allowed.

While we have determined that debtor's counsel are not entitled to full reimbursement from the estate for services they rendered, it should be emphasized that our rulings in no way affect the debtor's obligation to pay the remaining amounts due and owing.

While the time entries of the attorney for the trustee are also deficient in detail, his application raises a different issue. The hourly rate for both Bavely and his partner, E. Ronald Grossheim was $85 in 1982 and 1983, $95 for 1984, and $100 an hour for 1985 and 1986. Nonetheless, Bavely and Grossheim seek to have all of their time compensated at $125 per hour as a bonus in light of the complexity and uniqueness of the case.

As counsel correctly notes, the starting point which bankruptcy courts have traditionally employed for arriving at a reasonable fee under 11 U.S.C. § 330 is to multiply a reasonable hourly rate times the number of hours worked. This "lodestar" may then be adjusted upward or downward based upon a variety of factors, including the novelty and difficulty of the work performed, the results obtained, and the risk of loss. This formulation is a hybrid of the lodestar approach of the Third Circuit (*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir.1973)) and the 12–factor approach of the Fifth Circuit (*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)). *See, e.g., In re First Colonial of America*, 544 F.2d 1291 (5th Cir.1977).

Most courts assumed that this hybrid approach would allow for a bonus in cases where one or more of the appropriate factors was found to be applicable. *See, e.g., In re Penn-Dixie Industries, Inc.*, 18 B.R. 834, 838–39 (Bankr.S.D.N.Y.1982); *In re Aminex Corp.*, 15 B.R. 356, 362 (Bankr.S.D.N.Y.1981). However, in a recent series of cases the Supreme Court appears to have significantly tightened the standard for awarding a premium in excess of the lodestar amount. The first in this series was *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a civil rights case in which the court held that while the 12 factors developed by the Fifth Circuit might be considered in setting fees, the lodestar amount subsumed many of those factors. 461 U.S. at 434, n. 9, 103 S.Ct. at 1939, n. 9. Then came *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), which held that factors such as complexity of the case, skill of counsel, and results obtained were all built into the hourly rate used to calculate the lodestar amount, and that a premium above that amount should be awarded only where the Court makes a detailed finding based

upon specific evidence establishing rare or exceptional circumstances.

Finally, in *Pennsylvania v. Delaware Valley Citizens Council,* —— U.S. ——, ——, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439, 456 (1986), an environmental case, the court found a "strong presumption that the lodestar figure ... represents a 'reasonable' fee," and concluded that:

> ... [t]he lodestar figure includes most, if not all, of the relevant factors comprising a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance ...
>
> —— U.S. at ——, 106 S.Ct. at 3098, 92 L.Ed.2d at 457

The Court specifically reserved the question for later argument whether the lodestar might be enhanced "based on the likelihood of success, or to put it another way, the risk of loss." —— U.S. ——, 106 S.Ct. 3099, 92 L.Ed.2d 458.

While this line of cases involved other areas of the law, the principles they establish have been embraced by both bankruptcy courts and other courts passing on fees in bankruptcy cases. *See, e.g., In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1257 (5th Cir.1986); *In re Seneca Oil Co.,* 65 B.R. 902, 912 (Bankr.W.D.Okla.1986); *In re B. & W. Management, Inc.,* 63 B.R. 395, 412 (Bankr.D.D.C.1986). Given the substantial (and ever increasing) hourly rates by specialists in the bankruptcy field, as well as the general applicability of the Supreme Court's pronouncements, we are persuaded that these principles should apply in this Court as well.

 Turning to the application in question, we find that the "reasonable hourly rate" for calculating the lodestar consists of the customary rate charged by Bavely and Grossheim during the years in question. Thus, the lodestar for Bavely's time is $3,795.25 (44.65 hours × $85) for 1982 and 1983, $4,716.75 (49.65 hours × $95) for 1984, and $13,120 (131.20 hours × $100) for a total of $21,632. The lodestar for Grossheim's time is $1781.25 for 1984 (18.75 hours × $95) and $3200 for 1985 (32 hours × $100) for a total of $4,981.25. While many of the telephone calls and conferences listed in the time sheets do not refer to a particular subject area, virtually all of these communications were with persons involved in the Biltmore litigation. Accordingly, we do not believe a deduction from the lodestar for this inadequately described time is appropriate.

However, while we agree that the results of the litigation were both commendable and hard-won, no evidence has been presented which would justify a premium under the *Blum/Pennsylvania* standard. The complexity and uniqueness of the matter cannot independently support a bonus, and the risk of loss has not even been addressed, let alone proven, as a factor warranting the proposed addition to the lodestar.

Accordingly, the attorney for the trustee is hereby awarded $26,613.25 plus $3,357 in trustee's fees.

IT IS SO ORDERED.