**In re GREAT SWEATS, INC., Debtor.**

**Bankruptcy No. 88–01964–RS.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 9, 1990.

Stanley K. Joynes, III, Rilee, Cantor, Arkema and Edmonds, P.C., Richmond, Va., for debtor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court upon remand from the U.S. District Court, which reversed this Court's ruling on the debtor's attorneys' application for legal fees and remanded the case for further consideration. 109 B.R. 696. This Court held a hearing on counsel's original fee application upon remand and also counsel's application for compensation and expenses incurred in connection with the appeal of the original award.

FINDINGS OF FACT

Great Sweats of Virginia, Inc. ("debtor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on September 9, 1988. The debtor operated as a debtor-in-possession until May 9, 1989, when the debtor converted the case to a Chapter 7. On May 19, 1989, the debtor's attorneys, Rilee, Cantor, Arkema & Edmonds ("RCA & E"), submitted an application seeking compensation in the amount of $22,152.50 and reimbursement of expenses in the amount of $443.50. On June 9, 1989, a hearing was held on RCA & E's application. At that hearing, the Court awarded compensation in the amount of $15,000 and the requested expenses in the amount of $443.50. The Court cited several factors in reducing the amount of compensation, including the litigation of a questionable preference action, the inability to achieve a satisfactory disclosure statement, and the ultimate conversion of the case to a Chapter 7. The Court also noted its difficulty in deciphering how much time was spent on the preference action because of the "blocking" of time entries.

RCA & E appealed this award to the district court. At the hearing on appeal Stanley Joynes, Esq. appeared on behalf of RCA & E. The U.S. Trustee did not appear at the hearing. The District Court reversed this Court's decision, and remanded the case to this Court for an application of the lodestar method for determining fees. Subsequent to the remand, RCA & E submitted to this Court an application in the amount of $3,500.00 for fees and $252.10 for expenses for prosecution of the appeal. Neither the U.S. Trustee nor any other party in interest appeared at the hearing on remand in opposition to RCA & E's applications.

CONCLUSIONS OF LAW

1. Fees Upon Remand.

The district court's opinion instructs this Court to apply the "lodestar" method of determining fees. The lodestar is to be calculated by multiplying a reasonable number of hours by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The resulting product is presumed to be a reasonable award and is to be modified only rarely. *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549.

In its *Great Sweats* opinion, the district court identified the lodestar approach as "clearly superior" to the Fourth Circuit's 12–factor test as set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978)[1]; *see Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974) (12–factor test adopted by *Barber* court). Nevertheless, this Court is constrained to note that as recently as March 23, 1990, the Fourth Circuit addressed the issue of attorneys' fees in *Equal Employment Opportunity Commission v. Service News Company*, 898 F.2d 958 (4th Cir. 1990) ("*EEOC*"), and remanded the case to a district court for an application of the *Barber* 12–factor test. At first blush, these decisions would appear to be in conflict, but actually the Fourth Circuit's approach in *EEOC* represents a hybrid of the lodestar and 12–factor tests. In *EEOC*, the Fourth Circuit held that the factors enumerated in *Barber* should be considered in determining the reasonable rate and the reasonable number of hours. *EEOC*, at 965 (*citing Daly v. Hill*, 790 F.2d 1071 (4th Cir.1986); *Blum*, 465 U.S. at 888, 104 S.Ct. at 1543)).[2]

---

**1.** Factors to be considered include:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber*, 577 F.2d at 226 n. 28.

**2.** In *Blum*, the Supreme Court cited the legislative history of the statute authorizing fees for

After considering the district court's opinion in this case, the Fourth Circuit's *EEOC* decision, the Supreme Court's *Blum* and *Hensley* decisions, and other relevant authority, this Court believes that a proper analysis entails an application of the *Barber* test to the reasonableness of an attorney's hours and rates, the product of which constitutes the lodestar figure. The lodestar figure, as calculated by the Court, is to be modified only rarely.[3]

The Court notes that the burden of proof as to the reasonableness of requested compensation is on the applicant. *In re Reed,* 95 B.R. 626, 628 (Bankr.E.D. Ark.1988); *In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Werth,* 32 B.R. 442, 444 (Bankr.D.Colo.1983). Even in the absence of an objection, the Court has an independent duty to investigate the reasonableness of compensation. *Reed,* 95 B.R. at 628; *Pettibone,* 74 B.R. at 299–300. The Court's responsibility in awarding fees is great, as each creditor individually has little reason to object to requested compensation due to the costs incidental to the objection which it would incur when compared to the possible amount of recovery from the estate. The Office of U.S. Trustee, understaffed as it is, offers some solace pursuant to its responsibility under 28 U.S.C. § 586(a)(3)(A), but the ultimate responsibility lies with the Court.

### A. *Reasonable Billing Judgment.*

In calculating the lodestar, the Court should examine the time and labor required in a case, the results obtained and awards in similar cases. *Barber,* 577 F.2d at 226. The Court is not required to adopt the number of hours submitted by an attorney in his fee application, but may make an independent determination of the reasonableness of hours devoted to the case. *EEOC,* at 965; *Spell v. McDaniel,* 852 F.2d 762, 767–71 (4th Cir.1988); *In re B & W*

*Management, Inc.,* 63 B.R. 395, 402 (Bankr.D.D.C.1986). In this regard, the Court alone acts as a "disinterested arbiter." *Cohen & Thiros v. Keen Enterprises,* 44 B.R. 570, 573 (D.N.D.Ind.1984). According to the D.C. Court of Appeals, "it does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980). It is incumbent upon the Court to carefully scrutinize each fee application which it receives, especially applications for fees incurred in Chapter 11 debtor-in-possession cases, as the debtor-in-possession has an incentive to stay in business which is often contrary to its obligation to act as a fiduciary for its creditors.

Therefore, in its calculation of the lodestar, the Court will carefully examine a fee application to ensure that the attorneys have exercised reasonable billing judgment. If the debtor's attorneys have rendered services which are not the product of reasonable billing judgment, the Court is precluded from awarding compensation to that extent. A proper analysis includes a comparison with attorneys' fees awards in similar cases. *Barber,* 577 F.2d at 226. Several courts, including the Fourth Circuit, have severely reduced the number of hours submitted in a fee application in calculating the lodestar, citing a lack of billing judgment.

The Fourth Circuit in *Spell v. McDaniel,* 852 F.2d 762 (4th Cir.1988), considered a fee application which requested compensation for 1,512.9 hours devoted to the defense of an appeal of a trial court decision. In its calculation of the lodestar, the court reduced this number to 420 hours, holding that this figure represented the reasonable number of hours that reasonable counsel, exercising responsible "billing judgment," could have charged a client for the services performed. *Spell,* 852 F.2d at 768. This represents a 72% reduction in the number

civil rights actions, 42 U.S.C. § 1988, which referred to the 12–factor test of *Johnson* as the appropriate standard. *Blum,* 465 U.S. at 893, 104 S.Ct. at 1546.

3. As RCA & E has not requested an enhancement of its fees, and as the Court finds no exceptional circumstances which would warrant an adjustment to the lodestar as calculated by the Court, no adjustment to the Court's calculation of the lodestar will be made.

of hours submitted by counsel. In arriving at this figure, the court made detailed findings as to which hours were not justified according to reasonable "billing judgment." *Spell*, 852 F.2d at 767–71.

Likewise, in *In re Leonard Jed Co.*, 103 B.R. 706 (Bankr.D.Md.1989), the bankruptcy court considered a fee application which requested compensation for 409.0 attorney-hours of services rendered in the case. Citing several deficiencies in this total, the court arrived at a figure of 117.5 attorney-hours reasonably required. This represents a 71% reduction in the number of hours submitted by counsel. Among the factors cited by the court were duplication of effort, non-productive document review, services not shown to be beneficial to the estate and failure to exercise billing judgment. *Leonard Jed*, 103 B.R. at 713–14. With regard to billing judgment, the court cited language from the D.C. Court of Appeals which had been quoted in *Hensley, supra:*

> [attorneys] should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary; just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here.'

*Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40 (*quoting Copeland*, 641 F.2d at 891).

In *In re WHET, Inc.*, 62 B.R. 770 (Bankr. D.Mass.1988) (*WHET II*), a law firm sought compensation of $9,568.00 for collecting accounts receivable of $3,413.75. Citing the obvious cost-benefit disparity, the court reduced the award sought in this instance by $8,468, an 88% reduction. According to the court: "The cost to the estate of at least $9,568.00 as compared to the benefit of $3,413.75 is unreasonable and any rationale for this expenditure defies common sense." *WHET*, 62 B.R. at 778.

Turning to the facts in this case, the Court finds that RCA & E, as counsel to the debtor-in-possession, did not exercise reasonable billing judgment in pursuing a preference action of dubious value to the estate. It is fundamental that a debtor-in-possession's duty is to act in the *best interests of its creditors*. This duty does not mean that the debtor-in-possession is required to litigate every potential preference action. *See In re Curry and Sorensen, Inc.*, 57 B.R. 824, 828 (9th Cir. BAP 1986) (debtor-in-possession avoidance power is permissive, not mandatory). If it appears that litigation would cost more than the expected return, there is a duty *not* to commence litigation.

In this instance, RCA & E pursued a preference action where the maximum recovery would have been $2,000. As RCA & E devoted roughly 18.75 hours to the prosecution of this litigation (*see Appendix*), and seeks compensation at the rate of $120.00/hr., this results in $2,218.75 in fees. Therefore, after subtracting the fees from the maximum potential recovery, the maximum net return to the estate would have been *negative* $218.75. As it turned out, RCA & E settled the litigation and recovered $1,500 for the benefit of the estate. After deducting RCA & E's fees of − $2,218.75 the litigation of the preference *actually cost the creditors* − $718.75. Based on the foregoing analysis, the Court is inclined to believe that even a cursory cost-benefits analysis by RCA & E would have shown the litigation to be more expensive than it was worth.

It is notable that RCA & E misconstrues the duty of the debtor-in-possession in justifying its commencement of the preference litigation. In its brief on remand, RCA & E asserts that even in cases where the preference is "something more" than *de minimis*, "the debtor has a fiduciary obligation to collect the asset." *Brief of RCA & E*, p. 5. This is not an accurate characterization of the duty. The duty is to act in the best interests of creditors. If this means not litigating a preference which may be of dubious value to the estate, so be it. There is no mandatory requirement that the debtor bring the action. *Curry and Sorensen*, 57 B.R. at 828. Moreover, contrary to RCA & E's contentions, the cost-benefit ratio was not difficult to deter-

mine. After unsuccessfully attempting to recover the asset by means of a demand letter, the reasonable assumption could have been made that the other party intended to fight the action. The preference provision of the Bankruptcy Code is not as simple as RCA & E would have the Court believe, consequently, it should have been apparent that litigation would be relatively costly. Therefore, the Court is of the opinion that RCA & E failed to exercise reasonable billing judgment in litigating the preference action and consequently will not award the $2,218.75 in fees incurred by RCA & E in pursuing it.

### B. Adequacy of Fee Application.

In calculating the lodestar figure, the Court requires a certain degree of clarity in the information provided by an attorney's fee application. Where the application contains spotty descriptions of the services performed, the applicant has not carried his burden of proof and the Court is precluded from accurately determining the reasonableness of the hours spent. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939 ("Where documentation of hours is inadequate, the district court may reduce the award accordingly."). In Matter of Schaeffer, 71 B.R. 559 (Bankr.S.D.Ohio 1987), the bankruptcy court considered a fee application which, according to the court, contained "inadequate descriptions" of time entries and which "merely note[d] that a telephone call or conference occurred ... without providing any reference to the subject matter discussed." Schaeffer, 71 B.R. at 561. Consequently, in its calculation of the lodestar, the court reduced the number of hours requested in the application by 22.2 hours. Schaeffer, 71 B.R. at 561–62.

Of significant import in this case are the repeated instances of "lumping" or "blocking" of time. This practice of grouping several tasks under a single entry without specifying the amount of time spent on each item prevents an accurate determination of the reasonableness of the time expended. The Court is hardly alone in its disapproval of this practice. In In re WHET, Inc., 58 B.R. 278 (Bankr. D.Mass. 1986) (WHET I), the bankruptcy court opined: "Lumping a day's activities in one entry may be an honest and complete summary but is of absolutely no value for any analytical purpose." WHET, 58 B.R. at 280. Bankruptcy court decisions disapproving of this practice are legion.[4]

The fee application submitted by RCA & E contains, in a number of instances, the blocking of entries without an adequate breakdown of what amount of time was spent on each matter. Consequently, this blocking severely hinders the Court in its calculation of the lodestar figure. Several of RCA & E's time entries are particularly egregious. The entry of January 23, 1989 is illustrative:

> SKJ Phone Conference with D. Barzel re: status of various matters; being [sic] drafting letter R. Harrison re: Azalea lease; phone conference with F. White (2) re lease assignment; revision of motion and memo for S/J (Herefold); drafting supporting affidavit; phone conference with J. Oppleman (abtd)

According to the table corresponding to this entry, 2.40 hours were spent performing these tasks. This entry provides little useful information. Apparently, this entry contains six independent and distinct tasks, consequently, the Court can only guess how much time was devoted to each. Even

---

4. Matter of Crisp, 92 B.R. 885, 889 (Bankr.W.D. Mo.1988) (court refused to award "lumped" fees as court unable to discern amount of time spent in each activity); In re Wildman, 72 B.R. 700, 709 (Bankr.N.D.Ill.1987) ("each type of service should be listed with the corresponding specific time allotment"); In re Woerner, 67 B.R. 685, 687 (Bankr.E.D.Pa.1986) ("lumping" renders it impossible for the court to properly review attorney statement); Matter of Affinito & Son, Inc., 63 B.R. 495, 498 (Bankr.W.D.Pa.1986) ("We cannot determine the reasonableness of times expended and the necessity of those activities when they are 'clumped' with activities which the Court has determined are not compensable."); In re Holthoff, 55 B.R. 36, 42 (Bankr.E.D. Ark.1985) ("Counsel should not group all tasks performed in one day into a single billing. Each type of service should be listed with the corresponding specific time allotment."); Cohen & Thiros, 44 B.R. at 573; In re Horn and Hardart Baking Co., 30 B.R. 938, 944 (Bankr.E.D.Pa. 1983).

if this deficiency was overlooked, the inadequacy of description alone would be fatal. For example, the first portion of the entry reads as follows: "Phone Conference with D. Barzel re: status of various matters;" What matters? The Court is precluded from making an award based on this entry as it conveys no useful information. A second example: "phone conference with J. Oppleman (abtd)." This leaves the Court guessing as to the subject-matter of the call and also what "(abtd)" means. Again, the lack of information provided by this entry precludes the Court from awarding of fees for these services.

The Court has neither the time nor the inclination to decipher cryptic fee applications and in so doing arrive at a ballpark figure which may or may not accurately represent the reasonable number of hours spent. According to the bankruptcy court for the Eastern District of Pennsylvania: "The court should not be required to indulge in guesswork, nor undertake extensive labor to justify a fee for an attorney who has not done so himself." *Horn and Hardart Baking Co., supra*, 30 B.R. at 944.

Counsel was given an opportunity at the remand hearing to make such changes in the record as he considered necessary to enable this Court to exercise its responsibility on remand. Counsel elected to rely on the record of those proceedings. Therefore, the blocked time should not be allowed. *Wildman*, 72 B.R. at 709; *B & W Management*, 63 B.R. at 406; *Cohen & Thiros*, 44 B.R. at 573; *Horn & Hardart Baking Co.*, 30 B.R. at 944. A review of the record reflects 54.30 hours of time blocking, excluding blocked time which was devoted to the preference action (which the Court has previously taken into account). At the rates counsel wishes to be compensated ($120.00/hr.) this would amount to $6,516.00 of disallowed fees.

However, because this reduction and the reduction made for the services rendered in connection with the preference action would result in an award of $13,417.75, which is lower than the $15,000.00 previously granted, the Court will not reduce the award below the initial award. Therefore, the Court hereby awards RCA & E fees of $15,000.00 for services performed in representation of the debtor-in-possession.

2. Fees Incurred in Prosecution of Appeal of Fee Award.

█ RCA & E has submitted an application requesting $3,500.00 in fees and $252.10 of expenses for the services rendered in connection with the appeal of this Court's original award. According to the application, 32 attorney hours were recorded in connection with the appeal, and, as Mr. Joynes informed the Court at the hearing on remand, more time was spent but not recorded. As stated, neither the U.S. Trustee nor any other party in interest appeared at the appeal hearing before the district court in opposition to the appeal.

Considering RCA & E's application for fees and expenses incurred on appeal of the original award, the Court notes that RCA & E stated in its brief and at the hearing on remand that it devoted a lot of time to the appeal of the original award because it sought to establish guidelines for adequacy of fee applications in bankruptcy cases. While counsel considers this issue to be important to the local bar, it is also fair to say that a resolution of this issue is not so important to the *creditors of the bankruptcy estate*, who are ultimately paying the bills. As alluded to earlier in this opinion, generally none of these creditors individually have enough of a stake to object to the fees and expenses requested. Additionally, it is the duty of the Court to scrutinize fee applications, even in the absence of an objection.

In support of its application, RCA & E cites *Nunley v. Jessee*, 92 B.R. 152 (W.D. Va.1988), which concerned fees and expenses incurred by debtor's counsel in defending a fee award which had been appealed by the debtor. The *Nunley* court held that these fees were properly compensable under § 330, citing the Fourth Circuit's decision in *Young v. Kenley*, 641 F.2d 192 (4th Cir.1981). According to *Nunley*, "litigants who prevail on a fee award initially are routinely entitled to additional

fees required to defend those fees on appeal." *Nunley*, 92 B.R. at 153.

*Nunley* is distinguishable from the case at bar. The case at bar concerns a fee application for services rendered in *prosecution of an appeal* of this Court's initial award. The *Nunley* decision does not address the prosecution of an appeal of an award by the applicant, rather the defense of an appeal prosecuted by another party. The relevant distinction is that in a defense of an established fee award, the applicant is only seeking to defend that to which he is entitled. In the instant case, RCA & E seeks more than it is entitled, as this Court initially determined that RCA & E was entitled to $15,000. In this regard, it is important to note that, in remanding the case, the district court did not express any opinion as to the appropriateness of the original award. If the district court had awarded a higher amount, this case would be closer to *Nunley* because RCA & E's appeal would have established that RCA & E was entitled to more than this Court awarded. However, this is not the case. As demonstrated by the Court's application of the lodestar test to RCA & E's original fee application, the original award was, and is, adequate and is mandated by the factual circumstances and prevailing authority. For these reasons, *Nunley* is clearly inapposite.

Furthermore, granting RCA & E's application would provide an incentive for a law firm to appeal any fee award which did not provide for all of the compensation requested, thereby generating more work and more fees. In such a scenario, it is not difficult to contemplate the situation where fees incurred in multiple appeals overwhelm the original amount requested. Consequently, the Court declines to award fees and expenses incurred in appealing what was, in the first instance, a reasonable level of compensation.

Finally, Justice Brennan's comments on this issue, issued in his concurring and dissenting opinion in *Hensley*, are right on target:

> Vacating a fee award such as this and remanding for further explanation can serve only as an invitation to losing defendants to engage in what must be one of the least socially productive types of litigation imaginable: appeals from awards of attorney's fees, after the merits of a case have been concluded, when the appeals are not likely to affect the amount of the final fee.

*Hensley*, 461 U.S. at 442, 103 S.Ct. at 1944 (Brennan, J. concurring and dissenting opinion).

Accordingly, the Court denies RCA & E's request for fees and expenses incurred on appeal of the original award.

An appropriate Order will issue.

## APPENDIX
### HOURS DISALLOWED FOR SERVICES PERFORMED IN CONNECTION WITH PREFERENCE ACTION

| Date | Description of Activity | Hours |
|---|---|---|
| 11/14/88 | SKJ Review Hurd letter re: Hereford preference; phone conference with P. Herman (abtd); review Dicks letter re: Order | .40 |
| 11/14/88 | SKJ Drafting preference action re: Herefords | 2.10 |
| 12/20/88 | DKS Legal Research; preference matter re: rent payments | 1.25 |
| 01/03/89 | SKJ Legal research and drafting motion and memo for S/J re: Hereford preference | 4.20 |
| 01/23/89 | SKJ Phone conference with D. Barzel re: status of various matters; begin drafting letter R. Harrison re: Azalea lease; phone conference with F. White (2) re lease assignment; revision of motion and memo for S/J (Hereford); drafting supporting affidavit; phone conference with J. Oppleman (abtd) | 2.40 |
| 01/27/89 | SKJ Review Hereford response to admissions and requests, phone conference with D. Barzel re: same | .60 |

| Date | Description of Activity | Hours |
|---|---|---|
| 01/31/89 | SKJ Phone conference with D. Barzel re: Azalea lease situation; review Hurd letter; preparation of responses to admissions | 1.90 |
| 02/01/89 | SKJ Preparation of responses to admissions; phone conference with R. Harrison re: Azalea lease; letter to D. Hurd re: hearing; legal research to preference action; preparation of supp. memo re; S/J | 2.70 |
| 02/03/89 | SKJ Phone conference with D. Barzel re: Azalea lease; phone conference with D. Hurd re: Hereford matter | .40 |
| 02/07/89 | SME Phone conference with D. Hurd re: Hereford matter | .20 |
| 02/09/89 | SKJ Preparation of motion for approval of Hereford settlement and Stipulation of Dismissal re: same; letter to D. Hurd re: same; preparation of notice of presentment of order and certificate | 2.10 |
| 02/14/89 | SKJ Letter to Clerk re: IPTC; phone conference with D. Hurd re: settlement papers (2) | .50 |
| | TOTAL | 18.75 |

| | | |
|---|---|---|
| Stanley K. Joynes | $120.00/hr. × 17.30 hrs. | $2,076.00 |
| Steven M. Edmonds | 120.00/hr. × .20 hrs. | 24.00 |
| David K. Spiro | 95.00/hr. × 1.25 hrs. | 118.75 |
| TOTAL | | $2,218.75 |

Note: Because some of the time included above contains blocked time, it has not been included in the following summary.

## HOURS DISALLOWED FOR IMPERMISSIBLY
## BLOCKED AND INADEQUATELY DESCRIBED TIME ENTRIES

| Date | Description of Activity | Hours |
|---|---|---|
| 09/09/88 | SKJ Conference with clerk's office re: filing petition, schedules, applications; phone conference with D. Barzel re: same (2); conference with D. Barzel re: revisions; conference with clerk's office re: revisions | 3.50 |
| 09/09/88 | SKJ Revision of Pannill Stay Motion and Order; letter to Boland; letter to clerk | .50 |
| 09/15/88 | SKJ Phone conference with D. Barzel re: statement of income and expense; letter to creditors, MaceRich and Lampert re: turnover; work on amendments to list of creditors; preparation of EIN application; letter to clerk | 4.50 |
| 09/22/88 | SKJ Revision of amendment to schedule; legal research re: COBRA requirements; phone conference with D. Barzel re: sales performance, signing documents; landlord questions re: assumption | 1.10 |
| 09/27/88 | SKJ Conference with S. Carse and D. Barzel re: reorg. plans; payroll tax matter; COBRA; lease strategies | 1.20 |
| 09/28/88 | SKJ Preparation of notice of rejection on Midlothian lease; drafting of motion for approval of rejection; letter to R. Harrison re: intention re: Azalea Mall | 2.30 |
| 09/30/88 | SKJ Phone conference with D. Barzel re: tax form; conference with Aust. re: 341 meetings; sales performances; plan outline | .40 |
| 10/05/88 | SKJ Review correspondence from Barzel re: tax claims; additional creditors; Etonic; begin legal research re: scope of stay | 2.90 |
| 10/06/88 | SKJ Phone conference with D. Barzel re: tax letter; Monarch contract; plan outline | .40 |
| 10/11/88 | SKJ Phone conference with D. Barzel re: ACP; Mace Rich; extension of time to assume or reject; JRL assignment; public offering idea; revision of Prinster letter | .70 |
| 10/12/88 | SKJ Phone conference with D. Barzel re: insurance (COBRA) list; phone conference with D. Barzel re: Nickells' lease; with J. Lee re: Nickells' lease; and with clerk re: ACP order | 1.10 |

| Date | Description of Activity | Hours |
|------|------------------------|-------|
| 10/19/88 | SKJ Phone conference with D. Barzel re: Mace Rich letter; forwarding documents to US Trustee; Va. Power correspondence; COBRA letters | .40 |
| 10/27/88 | SKJ Review client correspondence re: tax payments and bank accounts; drafting Motion to extend time re: assumption/rejection of leases and notice of hearing; drafting Motion re: Nickell's lease; phone conference with G. Abernathy re: hearing date; arranging for filing and service | 5.20 |
| 11/02/88 | SKJ Phone conference with B. Parkinson re: Azalea lease; phone conference with P. Herman re Nickell's lease; and with D. Barzel (abtd) | .50 |
| 11/03/88 | SKJ Review financial projections; phone conference with D. Barzel re: phone conference with lessors re: extensions; re: bank accounts | .60 |
| 11/04/88 | SKJ Phone conference with D. Barzel re: meeting with LeClair; phone conference with B. Parkinson (2) re: DBA Assoc. lease; drafting consent order re: DBA | .30 |
| 11/06/88 | SKJ Phone conference with B. Parkinson; conference with same re: consent order re: DBA Assoc.; drafting order re: extension of time re: Walnut Mall and Willow Lawn; drafting order re: Nickells' lease | 2.40 |
| 11/08/88 | SKJ Phone conference with 1st Va. Bank re: Van loan; and with D. Barzel re: conference with Tulstar; conference with B. Broscious re: Pannill | 1.00 |
| 11/29/88 | SKJ Phone conference with B. Broscious re: Pannill's interest, subordination rights; phone conference with J. Block, account re: retainer; phone conference with D. Barzel re: Va. Power; taxes; investors | .90 |
| 12/20/88 | SKJ Revision of motion and memo re: exclusive periods; phone conference with B. Moore re: supp. discl. statement; drafting supp. discl. statement | 1.80 |
| 12/28/88 | SKJ Review proof of claim file at court; review docket sheet; make notes re: filing; phone conference with G. Abernathy re: hearing on 1/5/89 | 2.20 |
| 12/29/88 | SKJ Letter to Conlon, Dicks, etc. re: hearing on Walnut leases; phone conference with Broscious re: Pannills intentions; phone conference with Barzel (abtd) | .80 |
| 12/30/88 | SKJ Letter to Oppleman re: Crestar loan; draft plan of reorganization; phone conference with Signet Bank re: DIP investment; phone conference with D. Barzel re: same; draft memo re: acct. | 3.00 |
| 12/31/88 | SKJ Drafting amendments to schedules; review creditors related correspondence | 3.00 |
| 01/05/89 | SKJ Preparation for and attendance on Walnut Mall rejection; exclusive periods; Crestar Adequate protection; Arthur Young retention; conference with L. Coppinger; conference with D. Barzel re: plan, liquidation analysis | 3.00 |
| 01/18/89 | SKJ Review monthly financial report; phone conference with J. Oppleman (abtd); phone conference with B. Parkinson (abtd); letter to P. Herman re: release of Spencer Rd. lease; drafting release | .90 |
| 01/30/89 | SKJ Attendance at hearing re: extension of exclusive period; conference with L. Coppinger re: sale of van; phone conference with D. Barzel re: same; drafting notice to creditors re: same | 2.50 |
| 02/08/89 | SKJ Phone conference with D. Hurd re: settlement; conference with R. Harrison re: Azalea lease; phone conference with D. Greenberg re: books and records; phone conference with Court re: striking hearing; drafting stip of Dismissal, Notice and Motion to approve compromise | 3.10 |
| 02/13/89 | SKJ Conference with D. Barzel; attendance at cont'd Section 341 meeting | 1.20 |

| Date | Description of Activity | Hours |
|------|------------------------|-------|
| 02/15/89 | SKJ Phone conference with D. Barzel re: Azalea matter; review Jan. financial report; arranging for filing of same | .40 |
| 03/03/89 | SKJ Review Lampert proofs of claim; phone conference with D. Barzel (2) re: salary claim; letter to B. Broscious re: Pannill Subord. rights and Lampert salary claim | 2.10 |
| 03/15/89 | SKJ Phone conference with D. Barzel re: misc; phone conference with L. Coppinger re: financial reports | .40 |
| | TOTAL | 54.30 |

| | | |
|---|---|---|
| Stanley K. Joynes | $120.00/hr. × 54.3 hrs. | $6,516.00 |
| TOTAL | | $6,516.00 |