In re Leonard Otis HUNT, Shirley Colleen Hunt, Debtors.

Bankruptcy No. 2–86–01978.

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 14, 1990.

George J. Tzangas, Tzangas, Plakas &
Mannos, Canton, Ohio, for debtor in posses-
sion.

Sara J. Daneman, Chester, Hoffman,
Willcox & Saxbe, Columbus, Ohio, Chapter
7 Trustee.

Albert R. Ritcher, Asst. U.S. Atty., Co-
lumbus, Ohio.

Jody Oster, Small Business Admin., Co-
lumbus, Ohio.

Charles M. Caldwell, Office of the U.S.
Trustee, Columbus, Ohio.

## OPINION AND ORDER ON FEE APPLICATION OF ATTORNEYS FOR DEBTORS

BARBARA J. SELLERS, Bankruptcy
Judge.

This matter is before the Court upon an
application by counsel for the debtors for a
final allowance of compensation for servic-
es and reimbursement for expenses. Sara
J. Daneman, the Chapter 7 trustee ("Trust-
ee") and the United States of America,
Small Business Administration ("SBA"),
objected to the application and the matter
was heard by the Court.

The Court has jurisdiction in this contest-
ed matter under 28 U.S.C. § 1334 and the
General Order of Reference previously en-
tered in this district. This is a core pro-
ceeding pursuant to 28 U.S.C. § 157(b)(2)
which this Bankruptcy Judge may hear and
determine.

This case was filed under Chapter 11 of
the Bankruptcy Code on May 21, 1986. On
January 24, 1990 the Court converted it to
a case under Chapter 7. George J. Tzan-
gas of Tzangas, Plakas & Mannos was
appointed as counsel for the debtors in
possession early in the Chapter 11 case.
Prior to the bankruptcy filing Tzangas re-
ceived a retainer in the amount of $41,540.

On March 1, 1988 Tzangas filed an appli-
cation seeking an interim allowance of com-
pensation for services and reimbursement
of expenses for the period between Decem-
ber 5, 1985 and January 25, 1988. The
amount requested was $31,253.50 for ser-
vices and $1,367.18 for expenses. That re-
quest was allowed by the Court on an
interim basis without objection on Novem-
ber 16, 1988 and Tzangas was authorized to
draw against his retainer to the extent of
the amounts allowed.

The second application, filed on March 8,
1990, is called a final application. How-
ever, it seeks allowance for the period be-
ginning January 26, 1988 and ending March
8, 1990. The amount requested is $33,918
for services rendered and $510.08 for reim-
bursement of expenses. In addition, Tzan-
gas requests an additional allowance for
future anticipated services in the Chapter 7
case. At the hearing on this matter he
provided additional detail for the Chapter 7
services which the Court presumes were in
the $5,000.00 request, including some
$197.50 in expenses through July 17, 1990.
The total requested for services and ex-
penses is $72,243.76.

The Trustee and SBA (collectively "Ob-
jectors") oppose the application. Grounds
stated for those objections include the fail-
ure of the application to conform to the
requirements of Local Bankruptcy Rule 4.4
and Bankruptcy Rule 2016. Specifically,
the Objectors believe the services per-
formed were insufficiently identified, inade-
quately accounted for, unreasonable, dupli-
cative and sometimes irrelevant. The Ob-
jectors further agree that many of the ser-
vices ought not to be charged to this estate
and that the first interim application should
be reevaluated in light of the objections
and the overall result achieved in the case.

█ The Court believes it now is appro-
priate to consider both the Final Applica-
tion and the earlier Interim Application so
that this ruling can establish Tzangas' total
allowance for compensation from this es-
tate.

Under the provisions of 11 U.S.C. §§ 328
and 329 and whether or not any objection
has been filed, this Court has an obligation
to determine the reasonableness of fees
requested for actual and necessary services

rendered by a professional employed under Section 327 of the Bankruptcy Code. That determination is based upon criteria first set forth in controlling case law in this circuit under the provisions of the Bankruptcy Act of 1889 (now repealed). With the exception of the economic concern for frugality which was explicitly overruled during the enactment of the Bankruptcy Reform Act of 1978 [1], the factors governing fee applications by professionals in this circuit are those adopted in *Cle–Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863 (6th Cir.1974), *cert. denied* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53; *see Hunter Savings Assoc. v. Baggott Law Offices Co. (In re Georgetown of Kettering, Ltd)*, 750 F.2d 536 (6th Cir.1984). Those factors include:

1. The amount of work done;
2. The novelty and difficulty of the questions involved;
3. The skill requisite to perform the legal service properly;
4. The results accomplished;
5. Whether the fee is fixed or contingent;
6. The amount involved in connection with the services rendered;
7. The length of time consumed;
8. The experience, reputation and ability of the attorneys;
9. The size of the estate; and
10. The opposition met. *Cle–Ware*, 493 F.2d at 868–9.

■ In making that determination, it is also helpful to consider the customary fee, the preclusion of other employment by the attorney because of the acceptance of the case, the undesirability of the case and awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *see also American Benefit Life Insurance Company v. Baddock (In the Matter of First Colonial Corp. of America)*, 544 F.2d 1291 (5th Cir.1977), *cert. denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388.

■ Of those factors, the result achieved has the greatest determinative weight. *Cle–Ware*, 493 F.2d at 868. In this Court's opinion, it is an evaluation of the time and effort expended in comparison with the results obtained which is the thrust of the analysis. While impressive results with little effort are to be rewarded generously, great amounts of time and energy with little result require much greater scrutiny. It is also necessary that the services compensated be professional ones, rather than ministerial or administrative services. *Cle–Ware*, 493 F.2d at 868 and 877.

■ In order for the Court to evaluate the reasonableness of the fees requested utilizing the *Cle–Ware* guidelines, it is also necessary for the applicant to set forth with specificity the services for which compensation is requested. Each entry in that summary should indicate who performed the services, the time spent, the nature of the activity performed, and the relevance of that activity to matters in the case. A simple statement that a telephone call was made, a letter written, or a conference held does not sufficiently describe the service such that the Court can analyze its reasonableness or necessity.

■ Without analyzing Tzangas' fee application in this opinion on a line by line basis, there are several general conclusions the Court has reached. First, there are numerous billings by parties who are admittedly not professionals or, who after challenge was made to their status, were not shown to be professionals as that term is used in §§ 327 and 330 of the Bankruptcy Code. That factor alone causes the Court to subtract $8,043.50 from the requests for the time billed for those persons. There also are charges for uncompleted telephone calls and charges for which the description given either is insufficient to show the services or insufficient to justify the time ascribed to the services shown. The Court believes those charges exceed the reasonable time spent by some $994.00. Therefore, a further subtraction is made for those entries. Additionally, there are instances of duplicative services where two attorneys were used when, in the Court's

1. 124 Cong.Rec. H 11,091–92 (daily ed. September 28, 1978) (statement of Rep. Edwards).

opinion, only one attorney should have been required. The Court ascribes $1,962.00 to charges for such duplication. Those charges also will be subtracted from the total requested. This subtraction includes some time billed for conferences where the need for the conference was not obvious, was not explained and was not detailed sufficiently for the Court to understand the purpose.

 There are significant billings in this case for services which the Court believes resulted in no benefit for creditors of these estates. The Court does not expect the attorney to succeed in every endeavor he undertakes on behalf of the client. But the endeavor for which the estate is expected to pay must be reasonably calculated to produce a benefit to the estate. This means that if the odds against success in obtaining the relief sought are greatly unfavorable, the benefit which would result if the endeavor succeeds should be of a greater value than an activity for which the chances of success appear greater. One example is the debtors' proposed plan and disclosure statement. Much time and effort went into the preparation of those documents, but the underlying feasibility of the proposal was nonexistent at the time the plan was offered. An attorney should not expect to be fully compensated for such unrealistic effort. Likewise, the entire effort surrounding the debtors' request for this Court to decide certain matters relating to actions ongoing in various state courts and to opine about entries made by state court judges appears ill advised and inappropriate. This is especially true where special counsel had been hired to pursue the litigation in state court and this Court had specifically directed that duplicative effort would not be compensated. Subtraction of $962.00 in requested fees is being made for these and other ill advised "services."

 Tzangas further seeks significant compensation for services rendered since this case was converted to Chapter 7. There are special difficulties with that request. The requirements of 11 U.S.C. § 503(b) and judicial interpretations of that statute indicate that, even where a request for payment of fees and reimbursement of expenses properly comes from an attorney for a Chapter 7 debtor pursuant to 11 U.S.C. § 503(b)(2), such request is subject to strict scrutiny and is allowable only for services and expenses which directly benefit the estate rather than those services advancing only the interests of the debtors. *In re Schaeffer*, 71 B.R. 559 (Bankr.S.D. Ohio 1987); *In re Rhoten*, 44 B.R. 741 (Bankr.M.D.Tenn.1984). Liability for services of personal benefit properly remains with the debtors. *In the Matter of Hunt*, 59 B.R. 842 (Bankr.N.D.Ohio 1986). Services which are duplicative of the Chapter 7 Trustee's efforts and are not authorized by the Trustee cannot be compensated. This is especially important in a Chapter 7 case because the debtors are seeking the benefit of a discharge at the same time they are attempting to exempt as much of their property as possible from liquidation and distribution to their creditors.

Absent authorization under § 503(b)(2), the only other relevant basis for the allowance as an administrative expense claim of fees for an attorney for Chapter 7 debtors is as "actual, necessary costs and expenses of preserving the estate" pursuant to 11 U.S.C. § 503(b)(1)(A). However, under § 503(b)(1)(A) the same difficulty arises with regard to the nature of the services for which reimbursement is sought. While the Court will not find that such an application could never be granted, the burden upon the claimant is heavy in a Chapter 7 bankruptcy case.

In this case that burden has been met only with regard to services for the preparation of the Chapter 7 schedules, which were not timely filed, and attendance at the meeting of creditors in the Chapter 7 case required by 11 U.S.C. § 341(a). Therefore, all amounts requested from the estate for services since the case was converted to Chapter 7 are disallowed except for $1,510.00. This results in a disallowance of $5,748.00. Whether these services are compensable from the debtors from their post-conversion property is not before the Court at this time. Any such charges

would be subject to the reasonableness requirement of 11 U.S.C. § 329, however.

 Next, there are certain expense reimbursement requests, sometimes separately set forth and sometimes included with the services documentation, which do not appear properly compensable. These include entries for $147.11 in expenses after conversion where those expenses appear unrelated to the compensable services and an entry to the Ohio State Bar Association for $130.48. The total subtracted is $277.59. The Court further presumes that all interest has been taken out of the request as indicated at the hearing.

 Finally, the Court is forced to subtract from the total requested by Tzangas for what must be characterized as less than expected management and control of this case. Unauthorized payments occurred to an accountant for which no order of employment had been sought. According to Tzangas, the debtors, through retainage funds deposited in Tzangas' trust account, repaid $9,000.00 of a loan they incurred post-petition. Neither the loan nor the repayment was revealed to creditors or authorized by the Court. In the beginning of the case the Court observed in the relief from stay litigation that the parameters of cash collateral usage were not known either to the debtors or to their counsel. The conduct of a Chapter 11 case as if the Chapter 11 had not been filed does not warrant compensation at the rate normally experienced in Chapter 11 estates. Frankly, such services, or lack of services, only make harder the job of the Court and of other parties to the case. That quality of service must be reflected in a subtraction from the fee request. In this case, 20% of the remaining fee request was subtracted on that basis.

Based upon the foregoing the Court finds that the request of Tzangas for an allowance of fees and reimbursement of expenses in the total amount of $72,243.76 should be allowed as a claim against this estate only in an amount of $43,405.34. Credit shall be given against this allowance for the retainer previously applied in the amount of $32,540.00. The remaining amount of $10,865.34 represents $1,560.39 allowed as an administrative expense claim for Chapter 7 services and $9,304.95 for the Chapter 11 administrative expense claim.

IT IS SO ORDERED.