In re ROGER J. AU & SON, INC., CDE-CO Maritime Construction, Inc., Firelands Sewer & Water Construction Co., Inc., Confirmed Debtors.

Bankruptcy No. 683–00986.

United States Bankruptcy Court, N.D. Ohio.

May 18, 1990.

John Schwemler, Brouse & McDowell, Akron, Ohio, for debtor.

Richard Gurbst, Squire, Sanders & Dempsey, for NEORSD.

Edward Brown, Arter & Hadden, Cleveland, Ohio, for Aetna Cas. & Sur. Co.

Dan Casamatta, Office of U.S. Trustee, Cleveland, Ohio.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The court has before it three separate motions for the allowance of interim compensation and expenses filed by the law firm of Brouse & McDowell (Brouse), counsel for the confirmed debtors. The motions seek the aggregate allowance of $149,-441.50 in attorney fees and $10,274.96 in reimbursement of expenses.

Objections to the applications were filed by the Aetna Casualty & Surety Company, Inc. (Aetna), the Northeast Ohio Regional Sewer District (NEORSD) and the United States Trustee.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## HISTORY OF THE CASES [1]

To gain a greater understanding of the charges asserted by Brouse, a brief review of the history and results of these cases is appropriate.

Roger J. Au & Son, Inc. (Au) and CDECO Maritime Construction, Inc. (CDECO) filed for relief under Chapter 11 of Title 11 of the United States Code on July 26, 1983. Firelands Sewer & Water Construction Co., Inc. (Firelands) filed its separate Chapter 11 petition on January 13, 1984. All three debtors are related corporations with Charles H. Au being the sole shareholder of all. By orders entered on November 10, 1983, Brouse was employed as counsel for Au and CDECO. A separate order of employment of the law firm was entered in Firelands on January 16, 1984.

Prior to its filing, Au was involved in sewer construction and had a creditor/surety relationship with Aetna. As part of this creditor/surety relationship, Au assigned to Aetna various claims it had under pending construction contracts. One such claim arose out of a contract job known as the Cuyahoga Valley Interceptor Section D (CVID), a project coordinated by an entity now known as NEORSD.

By an agreement entered into in December, 1981, Au and Aetna settled upon a procedure under which Aetna would reim-

---

1. Until consolidation of the cases was effected as a part of the confirmed plan of reorganization, the three Chapter 11 cases were adminis- tered separately. From time to time herein the debtors and their cases may be referred to in the singular.

burse Au for employee costs, legal fees and expenses in connection with Au's pending contract claims, including those against NEORSD on the CVID project. Previously, on August 31, 1981, Au had filed a complaint in state court against NEORSD and others regarding the CVID project. Aetna, on July 29, 1982, filed its own complaint in state court against Au and NEORSD seeking a declaratory judgment that it had no further obligations under its bond. NEORSD has asserted counterclaims and cross-claims in each case. The two actions have been consolidated.

The relationship between Au and Aetna began to deteriorate and in November, 1985, Aetna withdrew its funding of the CVID litigation and began to intensify its efforts to resolve all of the litigation. Aetna initially sought the appointment of a trustee or conversion of the case to administration under Chapter 7 of the Bankruptcy Code. The court denied the motion. At the same time, the debtor and Charles H. Au filed an action in state court against Aetna asserting breach of fiduciary duty by reason of Aetna's discontinuation of the funding of the CVID litigation (*Au vs. Aetna* litigation). The case was removed to this court by Aetna. Larry Inscore, Esq., was appointed special counsel to prosecute the *Au vs. Aetna* litigation on behalf of the debtor and Charles H. Au under a contingency fee arrangement.

Aetna next sought the compromise of the NEORSD litigation. The court dismissed the motion on procedural grounds, finding that Aetna lacked standing. Aetna's final attempt to achieve its desired "global settlement," a creditor plan, however, proved successful. On January 4, 1990, over the strenuous objections of the debtors and Charles H. Au, the court confirmed Aetna's amended plan of reorganization. All creditors who voted in respect of the Aetna plan accepted it.

The confirmed plan of reorganization contemplates the dismissal of the *Au v. Aetna* litigation and the CVID litigation. Aetna will pay $1,750,000.00 to NEORSD while another party in the state court litigation, Euthenics, Inc., will pay $750,000.00

to NEORSD. In return for these dismissals, the Aetna plan provides, inter alia, that:

(a) Aetna will forego its post-petition claims in exchange for the assignment of certain Au claims against insiders;

(b) Aetna and NEORSD will forego their unsecured pre-petition claims against Au;

(c) Aetna will make a $150,000.00 cash contribution to the Au estate; and,

(d) Aetna will pay to the estate one-half of the net proceeds recovered on the Cuyahoga River claim which is subject to Aetna's security interest.

The disclosure statement ultimately approved by the court estimated that the fees and expenses of Brouse, as yet unpaid and to be charged against the sum available for distribution under the plan, would amount to approximately $140,000.00. This figure was provided to Aetna by Brouse. Using this information, Aetna calculated that, under its plan of reorganization, administrative and priority claims would be paid in full and, depending upon the success of the Cuyahoga River claim, unsecured creditors would receive between 19.7% and 80% of their claims. Charles H. Au, the sole equity security holder, is to receive nothing.

As previously noted, Brouse has filed three separate applications for compensation and expenses. In Firelands, the firm seeks $8,391.50 in fees and $258.97 in expenses. In CDECO, $19,908.00 in attorney fees and $600.68 in expenses is requested. In Au, Brouse seeks the sum of $121,142.00 in compensation and $9,415.31 in expenses. Previously, Brouse was awarded $73,627.83 in compensation and $4,304.19 in expense reimbursement for all three cases of which $30,695.14 in attorney fees and all the expenses have been paid. Payment of the remaining amount of $42,932.69 was deferred pending action on any final application.

## DISCUSSION

11 U.S.C. § 330(a) provides:

After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award

to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

    (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

    (2) reimbursement for actual, necessary expenses.

Various approaches have been developed to arrive at allowable compensation in bankruptcy cases. This court has previously reviewed these methods. *See, In re Mansfield Tire & Rubber Co.,* 65 B.R. 446 (N.D.Ohio 1986). After examining such cases as *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator and Standard Sanitary Corporation,* 487 F.2d 161 (3d Cir.1973) *appeal following remand,* 540 F.2d 102 (3d Cir.1976); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); *In re White Motor Credit Corporation,* 50 B.R. 885 (N.D.Ohio 1985); *Murphy v. International Union of Operating Engineers,* 774 F.2d 114 (6th Cir.1985) *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986); and *In re Penn–Dixie Industries, Inc.,* 18 B.R. 834 (S.D.N.Y.1982), we said:

    In summary, this court perceives its task to be to develop a lodestar figure for the services rendered by determining the number of hours that will be compensated and then multiplying the number of hours by the hourly rate allowed for the [applicant] in question. It will then consider the impact of such matters as the "quality" and "result" factors as identified in *Penn–Dixie Industries, Inc. supra.* In pursuit of its task, the court is to bear in mind that the burden of proof to establish the entitlement to and reasonableness of a fee is upon the professionals seeking compensation.

*In re Mansfield Tire & Rubber Co.,* 65 B.R. at 454–55 (citations omitted).

Brouse's applications cover the time period from May 4, 1984 through December 29, 1989. The firm asserts the expenditure of 1,587.6 hours of professional time during the period. At the time of Brouse's employment, the hourly rate of its partner, John A. Schwemler, lead counsel for the debtor, was $100.00 and such amount was set forth in the application for employment. The hourly rate of various other attorneys involved in these cases has increased since the order authorizing employment was entered, some to more than $100.00 per hour, as has Mr. Schwemler's. Brouse, however, to honor the bargain made in 1983, has recalculated its hourly charges to reflect a maximum of $100.00 per hour.

At the outset, the court notes from its review of the application that Brouse has billed 78.7 hours in regard to the *Au v. Aetna* litigation. As previously mentioned, Mr. Inscore was appointed by the court on a contingency fee basis to represent the estate in that matter. At the time of Mr. Inscore's appointment, the court found that "the debtor has no means with which to fund this litigation as administrative expenses clearly exceed the total cash on hand. Advances for expenses will be made by Charles H. Au individually with no assets of the estate being depleted." *In re Roger J. Au & Son, Inc.,* Memorandum of Decision at p. 5 (June 17, 1986).

Clearly, the debtor's lack of funds was the reason for the appointment of special counsel who would undertake representation on a contingency fee basis. The court finds that to allow compensation to Brouse for work performed on the same matter would contradict the rationale for the order of employment of Mr. Inscore. Accordingly, the 78.7 hours charged by Brouse for work it performed on the *Au v. Aetna* litigation will be disallowed, resulting in a reduction of $7,397.80.[2]

**2.** The average hourly charge for the work per-

formed by Brouse, according to its applications,

■ Brouse also seeks fees for work performed in regard to the CVID litigation. The total time claimed to have been expended in that regard is 44.6 hours. Edward Baran, Esq., was the attorney who initially represented the debtor. However, at or around the time Aetna withdrew its funding for this litigation, Mr. Baran also withdrew as counsel of record for the debtor. As far as this court is aware, Brouse has never entered an appearance on behalf of the debtor in the CVID litigation.

The court recognizes that as counsel for the debtor, Brouse must keep itself advised and informed of any and all matters that have a direct bearing upon the debtor's estate. However, the number of hours billed by Brouse appears to be excessive in light of the fact that the CVID litigation has been inactive on the state court docket for several years. The court will approve 22 hours as being a reasonable amount of time to have been spent in regard to the CVID litigation. Accordingly, 22.6 hours or $2,124.40, will be disallowed.

The results obtained and the benefits to the estate are, as previously noted, among the factors the court must examine in determining the reasonableness of a fee application. *See, Penn–Dixie Industries, Inc., supra.* The reasonableness of certain of the Brouse charges in the light of the results obtained is certainly open to question. For instance, in 1984 and 1985, 33.6 hours were billed in connection with the submission of a plan. No such plan was ever filed. Again in 1989, after the court approved Aetna's disclosure statement, Brouse billed 9.5 hours in regard to a joint debtor-Aetna plan and debtors' own plan. Again, no plan, other than Aetna's was submitted to the court.

■ As counsel for the debtor, Brouse is under a duty to investigate and pursue every avenue which may inure to the debtor's benefit. But, the options and avenues chosen must, in some capacity, benefit the estate. The court, upon review of the applications, has calculated that 104.6 hours

is approximately $94.00 ($149,441.50 ÷ 1587.6 hours). The court will use this figure in calcu-

were billed regarding debtors' unfiled plans of reorganization, debtors' consideration of dismissal of the cases, belated objections to Aetna's and NEORSD's claims and legal research that yielded no direct benefit to the creditors or the estate. The court cannot and does not say that counsel may not explore solutions on pain of non-payment for efforts not ultimately undertaken; it does observe that where the assets of the estate are extremely limited, as here, counsel for the debtor is under a duty to minimize its services and charges responsively to those limited resources. Therefore, the court finds it appropriate to reduce by one-half the number of hours billed by Brouse for work which, the court finds, produced no tangible or direct benefit to the estate. Accordingly, the fee request will be reduced by the sum of $4,916.20.

■ The court finds particularly disturbing charges for 25.5 hours' of time regarding a solicitation letter. At the time the court approved Aetna's disclosure statement, the debtor filed a motion seeking authority to send, over Aetna's and NEORSD's vigorous objections, a letter, written by Charles H. Au, to creditors requesting that they reject Aetna's plan of reorganization. The court conducted several hearings and telephone conferences before approving the effort. It has come to the court's attention, however, that no such letter was ever sent. It is incumbent upon the applicant to demonstrate the reasonableness of its request. Brouse has offered nothing to support any entitlement to these fees beyond its statement made at the fee application hearing that the work it performed was done with the interest of the estate in mind. However true that may be, the court perceives no benefit to the estate and $2,397.00 will be deducted from the fee request.

■ As previously mentioned, a part of the Au estate is the CVID litigation. As also noted, the debtor is not represented by Brouse in this state court litigation. On June 6, 1989, two months prior to the con-

lating reductions it deems appropriate.

firmation hearing on Aetna's plan of reorganization, the debtor sought to employ the law firm of Michaels and McGowan. The application was objected to by Aetna and NEORSD. The court sustained the objection on July 10, 1989. A supplemental order was entered on July 19, 1989, permitting the employment of Michaels and McGowan for the limited purpose of appearing at the confirmation hearing. Brouse has billed 25.2 hours to the estate for its services in seeking the employment of Michaels and McGowan.

First, the court questions the wisdom of seeking the employment of special counsel two months before the confirmation hearing on a plan which calls for the dismissal of the litigation special counsel would be employed to conduct. Even if the court had approved the employment of Michaels and McGowan, there would have been insufficient time for the firm to move the CVID litigation into a trial posture before the confirmation hearing or even, probably, before this court entered its order of confirmation of the plan of reorganization in January, 1990. A more economical and practical approach would have been to await a ruling by the court on Aetna's proposed plan. Additionally, the court finds the expenditure of 25.2 hours by Brouse, even in the face of objections by Aetna and NEORSD, to be clearly excessive. As previously observed, in an estate with limited cash and assets, counsel for the debtor must utilize its time wisely and efficiently. The court finds that the procurement of the appointment of counsel under the circumstances here present should not have exceeded 15 hours. Therefore, 10.2 hours, or $958.80, will be disallowed.

▮ The court now turns to the bulk of the application, the time billed in objecting to the disclosure statement and plan submitted by Aetna. A total of 430.7 hours was billed by Brouse in its attempts to have the disclosure statement found inadequate and to defeat the Aetna plan. Of this amount, 120.5 hours were devoted to objecting to the disclosure statement. Aetna filed its original disclosure statement and plan on September 2, 1988. Strenuous objections were filed by the debtor and Charles H. Au. Several hearings were conducted as to the adequacy of the disclosure statement with the court ultimately issuing a Memorandum of Decision and Order on the issue.

At the outset of its decision on the adequacy of disclosure, the court noted the unusually small creditor body of the three estates and asked, rhetorically, "[h]ow much detail, then, is necessary to enable this relatively small and generally sophisticated creditor body to make 'an informed judgment about the plan' (11 U.S.C. § 1125(a)(1)) Aetna desires them to accept?" *Matter of CEDCO Maritime Construction, Inc.*, 101 B.R. 499, 500–501 (Bankr.N.D.Ohio 1989). The court would repeat the question in the face of a request for payment for 120.5 hours of professional time expended solely in opposing the disclosure statement. The reasonableness of the amount of time billed by Brouse is particularly open to question in the light of the results obtained.

This court previously found the disclosure statement submitted by Aetna in these cases "to be * * *, with some modification and elaboration, * * * generally adequate to meet the requirements of 11 U.S.C. § 1125." *Id.* 101 B.R. at 502. Despite this finding, after Aetna filed its amended disclosure statement, a second round of objections was filed by the debtor raising substantially the same arguments that the court previously had addressed.

The court finds it appropriate to reduce the fee request of Brouse as it relates to the objection to Aetna's disclosure statement by approximately one-quarter, or $2,800.00.

Brouse has billed 310.2 hours for its work in opposing confirmation of Aetna's plan. Of this block of time, 144.3 hours were expended prior to the voting by the creditors, with the balance, 165.9 hours, being billed thereafter.

With respect to the amount of time billed prior to the voting by the creditor body, the court recognizes that the issues involved in the confirmation of Aetna's plan were

unique. The creditor plan that proposed a settlement of a lawsuit in which the plan proponent was a party presented novel questions of law and a complicated fact pattern. However, Brouse should have been guided by its professed desire to serve the best interest of the estate. Aetna's plan proposed to pay the unsecured creditors 19.7 to 80 percent of their claim. The alternative to the plan, as urged by the debtor and Charles H. Au, was to continue to pursue the long-dormant CVID litigation. The alternative to the Aetna plan offered the creditors more delay rather than a tangible benefit.

As to the work performed by Brouse after the creditor body voted, 169.5 hours, this is an expenditure of professional time in the face of acceptance by the entire voting creditor body. 11 U.S.C. § 330(a)(1) speaks of "reasonable compensation for ... necessary services rendered by [an] attorney." The court questions whether, after the entire voting creditor body accepted the plan, the time expended by Brouse in opposition to the plan was necessary. The court especially questions the reasonableness of the fee request in the light of the fact that only Charles H. Au, as the sole shareholder, was to receive nothing under the plan. Mr. Au, it will be remembered, was represented individually by counsel throughout the entire process, including the confirmation hearing. If the ardor of Brouse's attack on the proposed plan was driven by Mr. Au's concerns, it seems misplaced.

In no way does this court mean to suggest that counsel should not be compensated for work performed simply because, in the end, the court did not accept the position advanced. See, In re Besst Bingo, Case No. 687–01563, Memorandum of Decision (Bankr.N.D.Ohio Oct. 28, 1988). However, it continues to be our ruling that the amount of the fees sought must be reasonable in light of what was accomplished.

In examining the compensation requested for opposing the plan of reorganization, the court cannot ignore the fact that all of the voting creditor body accepted the plan and whatever is awarded to Brouse for its fees reduces the funds available to those same creditors. The court finds it appropriate to reduce by one-half the amount of time billed by Brouse for its efforts in opposing the plan of reorganization which will result in the disallowance of $14,579.40 in the fees sought.

Finally, Brouse seeks fees for work performed by it regarding a claim against the United States of America, Corps of Engineers involving the dredging of the Cuyahoga River. Aetna possesses a security interest in this claim. Aetna requested that Brouse limit its initial fees to $8,000.00. According to Aetna's calculations, approximately $8,900.00 has been billed. As part of the confirmed plan, 50% of the recovery on the Cuyahoga River claim will be paid to the estate after the deduction of attorney fees and costs.

Brouse states in its application that these fees are more appropriately characterized as Section 506(c) expenses.[3] Therefore, in the court's opinion, payment should be delayed until recovery on the claim. Accordingly, $8,900.00 of Brouse's fee request will be denied with such amount being recoverable from any realization on the Cuyahoga River claim.[4]

As to the balance of Brouse's fee request, the court finds the amount of time billed to be reasonable and the hourly rate charged not to be excessive. Accordingly, the court will allow as total interim compensation to Brouse the sum of $105,-367.90.

█ With respect to the reimbursement for expenses, Brouse seeks a combined to-

---

3. 11 U.S.C. § 506(c) provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

4. Due to Brouse's re-calculations of its fees at a maximum of $100.00 per hour, the court, based upon the information before it, cannot determine the exact dollar amount attributed to the Cuyahoga River claim. The court advises Brouse to set forth the exact amount attributed thereto in any final application it may file.

tal of $10,274.96. Even though these expenses have been actually incurred by Brouse in its representation of the debtor, the court finds it appropriate to deny in some measure the allowance of expense reimbursement for the reasons set forth in regard to compensation. The court cannot, efficiently, sort out postage, long distance telephone, travel and copy costs related to time expended on efforts it has deemed unworthy of compensation. It has allowed approximately 70.5% of Brouse's request for compensation. It will allow 75% or $7,706.22, of the amount requested as reimbursement for expenses.

An order in accordance herewith shall issue.