**In re Sam ALBERTO, Debtor.**

**Bankruptcy No. 90 B 06367.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 29, 1990.

Max Chill, Steven R. Radtke, Chill, Chill & Radtke, P.C., Chicago, Ill., for Sam Alberto, debtor.

Michael L. Weissman, Joan Kubalanza, Foley & Lardner, Chicago, Ill., for The CIT Group/Equipment Financing, Inc.

Gary I. Levinstein, Cary N. Goldberg, Levinstein & Resnick, Chicago, Ill., for D & D Disposal Service, Inc. and Frank Ward, Sr.

Paul T. Fox, Lori A. Goldstein, Matthew E. Wilkins, Holleb & Coff, Chicago, Ill., for Bank of Chicago–Little Village.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the application of Max Chill and Steven R. Radtke (collectively referred to as the "Applicants") pursuant to 11 U.S.C. § 331 and Federal Rule of Bankruptcy Procedure 2016 for allowance of interim compensation in the amount of $44,476.50 and reimbursement of expenses in the amount of $499.10, for the period January 5, 1990 through August 31, 1990. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. For the reasons set forth herein, the Court hereby allows interim compensation in the amount of $18,067.00 and reimbursement of expenses in the amount of $392.60.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Many of the facts, background and some of the history of this case are contained in an earlier Opinion of the Court. *See In re Alberto*, 119 B.R. 985 (Bankr.N.D.Ill.1990). The Applicants were retained by the Debtor and received a pre-petition advance payment retainer in the sum of $18,000.00. On April 5, 1990, the Debtor filed a Chapter 11 petition. The Debtor has operated as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. Hotly contested litigation among the Debtor and various creditors is pending in several forums which include the District Court for the Northern District of Illinois, the Seventh Circuit Court of Appeals, and this Court. For reasons stated in the earlier Opinion, the original plan and disclosure statement were stricken for violations of Federal Rule of Bankruptcy Procedure 9011. The Debtor has filed an amended plan and disclosure statement, and has also filed an adversary proceeding seeking declaratory relief, and determination of the validity, priority and extent of certain lien claims and interests in property.

## III. ARGUMENTS OF THE PARTIES

The Applicants seek the requested compensation for services performed incidental to these proceedings, the other litigation to which the Debtor is a party, and for investigations of various matters. The CIT Group/Equipment Financing, Inc. ("CIT"), D & D Disposal Service, Inc. ("D & D") and Frank Ward, Sr. ("Ward") object to the allowance and payment of any of the requested compensation. Bank of Chicago–Little Village (the "Bank") objects to the allowance and payment of all the requested sums and asks the Court to defer ruling on the instant application.

CIT's objections initially challenge the hourly rate charged by one of the Applicants as too high for the nature of most of the work performed. In addition, CIT argues that the descriptions for many of the entries are inadequate and insufficiently detailed. Moreover, CIT objects to compensation for services performed for the Debtor in other courts; work relating to the attempted sale of allegedly non-estate assets; work involving the Debtor's son; and services in connection with a non-debtor partnership. CIT further objects to allowance of compensation sought for defense of sanctions imposed by the district court upon the Debtor and one of the Applicants; the services incidental to the motion filed by the Debtor against CIT pursuant to 11 U.S.C. § 362(h); and the services rendered in connection with the stricken original plan and disclosure statement. D & D and Ward's objections raise some of the same points argued by CIT, but mainly contend that the application is premature until it is finally decided whether or not the Debtor retains any ownership interest in the beneficial interest of the land trust holding title to the Laflin property.

The Applicants defend the application, in part, by explaining the historical background of the Debtor's legal and financial problems culminating in the pending proceedings in the several courts. The Applicants assert that it is the intractable positions taken by some creditors in general, and CIT in particular, that have necessitated much of the work performed on behalf of the Debtor. The Applicants deny that they performed any services for non-debtor entities or persons. The Applicants conclude that the Debtor's creditors have forced the Debtor to act and defend on multiple fronts and forums, and therefore, cannot properly object to any of the fees and costs generated thereby.

## IV. DISCUSSION

### A. STANDARDS APPLICABLE TO FEE APPLICATIONS

Generally, professional persons seeking compensation from the estate must first be

authorized to be employed under section 327 and Bankruptcy Rule 2014. Interim fees may be allowed as prescribed by section 331, which utilizes the same substantive standards set forth in section 330. Pursuant to 11 U.S.C. § 330, authorized employed professionals applying for fees must then demonstrate that their services were actual, necessary and reasonable. The legislative history of section 330 expressly notes the Court's correlative duty to closely examine the reasonableness and necessity of the fees incurred. Bankruptcy Rule 2016(a), in turn, requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a). In addition, section 329 permits the bankruptcy court to review the fees of a debtor's attorney, paid during the year prior to the filing of the petition, for services rendered in contemplation of or in connection with the case. Section 329 empowers the bankruptcy court to order the return of excessive fees paid pre-petition.

■■■ The burden of proof to show entitlement to the fees requested is on the Applicant. *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). Moreover, the fee application must stand or fall on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987). Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact has a duty to independently examine the reasonableness of the fees. *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 734–735 (Bankr.N.D.Ill. 1988); *Pettibone*, 74 B.R. at 299–300; *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986). Moreover, fees for a debtor's attorney are properly payable out of estate assets when a commensurate benefit to the estate is provided, but not for services which personally benefit only the debtor.

*See In re Ryan*, 82 B.R. 929, 931–932 (N.D. Ill.1987). Interim fee awards are discretionary and are subject to reexamination and adjustment during the course of the case, and the Court may review the case at its conclusion and take into account the results obtained in making a final allowance. *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557 (Bankr.D.Utah 1985).

■■■ Several courts have listed other factors to be considered when reviewing fee applications. These other factors are set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors have been considered by the Court and are as follows: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Id.* at 717–719.

### B. SUMMARY OF THE COMPENSATION REQUESTED

The Applicants classify the services rendered into three categories and attempt to comply with the guidelines and format prescribed by *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D. Ill.1983). One problem with the selection of the three broad categories is that further and more refined classifications would have been more appropriate, meaningful and informative. The second and third categories in particular, fail to break out or segregate the work performed by the Applicants in each separate litigation or contested matter. As a result, work performed in assorted individual cases pending in the several courts is categorized togeth-

er, rather than itemized into distinct categories. Because the pleadings reveal at least six other cases venued in the various Illinois state and federal courts, proper analysis of the instant application is rendered more difficult by the absence of more clearly defined and discrete categories. Notwithstanding such problems, the Court has carefully reviewed the application and considered all the *Johnson* factors. The Applicants request that additional interim compensation be paid from the estate to cover the difference between the $44,476.50 in fees and $499.10 in costs sought and the $18,000.00 retainer received or $26,975.60.

The following is a list of the compensation sought by category as described in the application:

| CATEGORY | HOURS | AMOUNT REQUESTED |
|---|---|---|
| Conferences re filing for Chapter 11 protection, preparing schedules and work done re compliance with general requirements to operate under Chapter 11 and related miscellaneous matters | 25.00 | $ 4,997.00 |
| Negotiations with creditors re sale of equipment to reduce indebtedness and negotiations with creditors re plan to pay all creditors in full and seek dismissal of case; involvement in litigation re amount of debt and title to debtor's assets | 112.40 | 21,011.50 |
| Work done in connection with the adversary complaint against the debtor, the appeal from the district court's order dated 7/30/90 and on complaint against CIT and others | 112.40 | 18,468.00 |
| TOTAL | 249.80 | $44,476.50 |

## C. COMPENSATION ANALYSIS

### 1. CATEGORY ONE

■ Pursuant to this category, the Applicants seek $4,997.00. CIT's first objection relates to the fact that most of the services performed were those by Max Chill, billing at an hourly rate of $210.00 per hour, instead of Steven R. Radtke, billing at an hourly rate of $155.00. CIT contends that such services are so routine that it is doubtful that the higher rate is appropriate. In addition, CIT objects to the allowance of 1.50 hours of time expended in preparing the application.

■ The legislative history to sections 330 and 331, however, is clear that Congress intended that bankruptcy attorneys and other professionals serving in a case under title 11 would be compensated at the same rate they would be compensated for performing comparable services other than in a case under title 11. H.R.Rep. No. 595, 95th Cong., 1st Sess. 329–330 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 40–41 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. The fact that Chill, rather than Radtke, performed many of the initial services and prepared the initial pleadings and schedules does not *ipso facto* require the work to be compensated at the lower billing rate. The complexity of the prior litigation and the attendant legal issues raised, warranted utilization of the services of a highly experienced bankruptcy practitioner like Chill. Accordingly, Chill's services rendered at his normal billing rate are not properly reduced to a lower rate merely because they were rendered in connection with the early stages and pleading in the attempted Chapter 11 reorganization. Moreover, the nominal amount of time ex-

pended in the preparation of the application in an attempt to comply with the *Continental* guidelines is compensable under the controlling authorities followed by the Court. *See Pettibone*, 74 B.R. at 292; *Wildman*, 72 B.R. at 710–711.

■ Category One, however, contains a number of entries for which the description of services is inadequate, or where multiple services were "lumped" together into one entry without any notation of how much time was expended for each discrete service performed within the single "lumped" entry. In addition, some entries show that the Applicants participated in and billed for a single conference or meeting without making any showing of a compelling neces-

sity for both attorneys' presence and services. *Wildman* has long made it clear that telephone calls, conferences, letters, documents, and other matters which are referenced generally in a fee application, without explanation of the nature and purpose and specific matter to which same refer, are no more compensable than "lumped" entries. The rationale underpinning *Wildman* is that such entries make it impossible for the Court to determine whether the time spent on a specific task is reasonable. *See Wildman* at 700. Thus, it is impossible for the Court to clearly discern the compensable time from that which is not appropriately compensable. As a result, the following entries are disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 01/05/90 | MC | .50 hours | $210.00 | $ 105.00 |
| 04/04/90 | SRR | 2.00 hours | 155.00 | 310.00 |
| 04/05/90 | MC | .30 hours | 210.00 | 63.00 |
| 04/05/90 | MC | 2.80 hours | 210.00 | 588.00 |
| 04/05/90 | MC | 2.00 hours | 210.00 | 420.00 |
| 04/10/90 | MC | 1.00 hours | 210.00 | 210.00 |
| | | | | $1,696.00 |

## 2. CATEGORY TWO

Many of the entries in Category Two suffer from the same problems: "lumping"; inadequate descriptions; lack of specificity; and duplicative attendance by the Applicants at numerous meetings and hearings, absent a showing of compelling necessity for both attorneys to attend. Accordingly, the following entries are disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 04/05/90 | SRR | 4.00 hours | $155.00 | $ 620.00 |
| 04/06/90 | SRR | 1.20 hours | 155.00 | 186.00 |
| 04/09/90 | SRR | 1.50 hours | 155.00 | 232.50 |
| 04/10/90 | SRR | 1.60 hours | 155.00 | 248.00 |
| 04/16/90 | MC | 1.00 hours | 210.00 | 210.00 |
| 04/17/90 | SRR | .70 hours | 155.00 | 108.50 |
| 04/18/90 | SRR | .70 hours | 155.00 | 108.50 |
| 04/19/90 | SRR | 1.20 hours | 155.00 | 186.00 |
| 04/20/90 | MC | 3.00 hours | 210.00 | 630.00 |
| 04/23/90 | MC | 1.20 hours | 210.00 | 252.00 |
| 04/23/90 | SRR | 1.00 hours | 155.00 | 155.00 |
| 04/24/90 | SRR | 1.00 hours | 155.00 | 155.00 |
| 04/24/90 | MC | 2.50 hours | 210.00 | 525.00 |
| 04/26/90 | SRR | 2.60 hours | 155.00 | 403.00 |
| 04/26/90 | SRR | 1.50 hours | 155.00 | 232.50 |
| 04/27/90 | SRR | .70 hours | 155.00 | 108.50 |
| 05/01/90 | SRR | 1.00 hours | 155.00 | 155.00 |

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 05/07/90 | SRR | .50 hours | 155.00 | 77.50 |
| 05/08/90 | SRR | 2.00 hours | 155.00 | 310.00 |
| 05/09/90 | SRR | 1.00 hours | 155.00 | 155.00 |
| 05/10/90 | MC | 1.00 hours | 210.00 | 210.00 |
| 05/11/90 | SRR | .70 hours | 155.00 | 108.50 |
| 06/01/90 | SRR | 1.10 hours | 155.00 | 170.50 |
| 06/08/90 | SRR | 1.30 hours | 155.00 | 201.50 |
| 06/09/90 | SRR | .50 hours | 155.00 | 77.50 |
| 06/13/90 | MC | 1.20 hours | 210.00 | 252.00 |
| 06/20/90 | SRR | .70 hours | 155.00 | 108.50 |
| 06/21/90 | SRR | 1.00 hours | 155.00 | 155.00 |
| 06/22/90 | SRR | .70 hours | 155.00 | 108.50 |
| 06/28/90 | SRR | .50 hours | 155.00 | 77.50 |
| 07/06/90 | SRR | 1.00 hours | 155.00 | 155.00 |
| 07/31/90 | MC | 2.00 hours | 210.00 | 420.00 |
| 08/14/90 | MC | 1.50 hours | 210.00 | 315.00 |
| | | | | $7,417.50 |

### 3. CATEGORY THREE

The same "lumping" problems common to several entries in prior categories occur with respect to some of the entries in this category. In addition, some of the above entries show duplicative conferencing and hearing attendance by the Applicants. Therefore, the following entries are disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 08/01/90 | SRR | 8.00 hours | $155.00 | $ 1,240.00 |
| 08/02/90 | SRR | 4.00 hours | 155.00 | 620.00 |
| 08/02/90 | MC | 3.00 hours | 210.00 | 630.00 |
| 08/14/90 | SRR | .70 hours | 155.00 | 108.50 |
| 08/16/90 | SRR | 3.00 hours | 155.00 | 465.00 |
| 08/21/90 | SRR | 9.00 hours | 155.00 | 1,395.00 |
| 08/22/90 | SRR | 4.00 hours | 155.00 | 620.00 |
| 08/23/90 | SRR | 9.00 hours | 155.00 | 1,395.00 |
| 08/23/90 | MC | 1.00 hours | 210.00 | 210.00 |
| 08/24/90 | SRR | 6.00 hours | 155.00 | 930.00 |
| 08/25/90 | MC | 1.00 hours | 210.00 | 210.00 |
| 08/27/90 | SRR | 7.50 hours | 155.00 | 1,162.50 |
| 08/29/90 | SRR | 2.00 hours | 155.00 | 310.00 |
| | | | | $ 9,296.00 |

| | |
|---|---|
| DISALLOWANCE FOR CATEGORY ONE: | $ 1,696.00 |
| CATEGORY TWO: | 7,417.50 |
| CATEGORY THREE: | 9,296.00 |
| TOTAL DISALLOWANCE: | $18,409.50 |

**538**

## D. DISALLOWANCES ARE PROVISIONAL AND RULING ON A PORTION OF FEES IS DEFERRED

The Applicants are experienced and able attorneys with substantial bankruptcy experience and background. They are familiar with the requirements for fee applications and the cases which established the formatting and substantive requirements for same. The *Wildman* prohibitions and caveats concerning "lumping" and inadequately described time entries are well known. The fact that the Applicants chose to submit the application containing the foregoing entries proscribed by *Wildman* and its progeny, should create no surprise at the resultant disallowance of same. Such disallowance is provisional for purposes of this interim application and without prejudice to the Applicants to reapply.

■ One of the principal points raised by all the objectors is that allowance of the interim compensation is premature at this point in time given the posture of the case and the pendency of certain unresolved issues before this Court and the Seventh Circuit Court of Appeals. The principal issue in dispute is whether the Debtor or CIT owns the beneficial interest in the land trust holding title to the Laflin property (subject to the various lien and other encumbrances asserted by many parties including all the objectors and others). If the Debtor wins on this key issue, then much of the Applicants' time and effort expended in Categories Two and Three will produce a real and tangible benefit to the estate, and will be compensable to the extent reasonable and necessary. On the other hand, if CIT and other objectors prevail, and it is finally determined that the beneficial interest has been divested from the Debtor pre-petition, then much of the Applicants' efforts have been in vain and of no benefit, and are not appropriately compensable from estate assets. Interim compensation for professional services is adjudged by the Bankruptcy Code standards allowing reasonable compensation for actual necessary services which are beneficial to a debtor's estate. *In re George Wor-thington Co.*, 76 B.R. 605 (Bankr.N.D.Ohio 1987). The result attained is one of the most significant factors in determining the ultimate compensation award. *In re Mansfield Tire & Rubber Co.*, 19 B.R. 125 (Bankr.N.D.Ohio 1981). At this point in time, it is too early to gauge the effectiveness of all the efforts expended. Thus, allowance of the requested fees in full would be inappropriate, notwithstanding the "lumping" and other problems.

■ Because of the formatting problems and lack of more precise categorization of the services rendered, it is difficult to allocate and compute the portions of the application attributable to work performed relating to the Debtor's contention that he, not CIT, still owns the beneficial interest in the land trust. Computation of exactly how much time and effort the Applicants have expended on this crucial point is therefore virtually impossible at this juncture. It is clear, however, that a very substantial amount of the compensation sought relates thereto. This is one of the issues raised in the pending appeal. Consequently, until the outcome of that appeal is determined, it is the better exercise of the Court's discretion to neither allow nor disallow a substantial portion of the compensation sought in the instant application. Eight Thousand Dollars appears to be an appropriate sum to defer ruling on at this time.

■ Presence of sufficient funds in the estate to allow interim compensation without jeopardizing claims of equal priority held by others is a factor to be considered. *See In re Robin Industries, Inc.*, 16 B.R. 695 (Bankr.N.D.Ga.1982). Although the Applicants were paid a substantial pre-petition retainer, the last interim financial report filed by the Debtor showed only $4,200.00 cash on hand as of July 31, 1990. No subsequent debtor-in-possession reports have been filed, and the current cash position of the estate is unknown. Hence, award of any substantial additional amounts of interim compensation is inappropriate at this time. Accordingly, the Court allows the sum of $18,067.00 as in-

terim compensation pursuant to section 331 ($44,476.50 less the provisionally disallowed entries totaling $18,409.50, less the deferred amount of $8,000.00).

### E. REIMBURSEMENT OF EXPENSES

The Applicants bear the burden of establishing they are entitled to certain expenses. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill. 1989); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731. As for the application at bar, the Court disallows the expense entries for U.S. Messenger Service of $19.50 and for Melvin P. Kusibab of $87.00. The Court follows the expense description guidelines set forth in *Convent Guardian*. Those guidelines require some explanation showing the reasonableness, necessity, and description of exactly what was the expense advanced. These two expense entries fail to meet those guidelines. The remaining expenses, however, are sufficiently explained to warrant allowance. Consequently, the Court hereby authorizes reimbursement of expenses in the amount of $392.60.

### V. CONCLUSION

For the foregoing reasons, the Applicants are awarded interim compensation in the sum of $18,067.00 and are authorized to be reimbursed for expenses in the sum of $392.60. The pre-petition retainer shall be applied against the interim compensation allowed herein. The Court reserves ruling on the balance of the compensation requested, pending further proceedings before this Court and the Seventh Circuit Court of Appeals.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.