### In re The GIBBONS–GRABLE COMPANY.

**Bankruptcy No. 686–00875.**

United States Bankruptcy Court, N.D. Ohio.

June 12, 1992.

John F. Buchman, Day, Ketterer, Raley Wright & Rybolt, Canton, Ohio, for Newmarket Hotel Ltd.

1. This designation distinguishes these actions from over 100 preference actions commenced

David M. Hunter, Brouse & McDowell, Akron, Ohio, for Gibbons–Grable Assets Disposition Trust.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The court comes now to consider an Objection to the Eleventh Application for Compensation of Brouse & McDowell, counsel for The Gibbons–Grable Assets Disposition Trust (Objection) and a Motion for Review of Compensation (Motion). The Objection and Motion were filed by Newmarket Hotel, Ltd. (Newmarket) and joined by Standard Plumbing Company, these entities being general unsecured creditors of The Gibbons–Grable Company (Debtor). Oral argument was held April 2, 1992 and the parties have filed both pre-hearing and post-hearing briefs and responses thereto.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## FACTUAL AND PROCEDURAL HISTORY

This Chapter 11 case resulted in the confirmation of a reorganization plan on May 20, 1988. The plan incorporated an agreement creating an Assets Disposition Trust (ADT) to, *inter alia,* pursue legal actions on behalf of the Debtor, collect and liquidate estate assets and distribute the proceeds to creditors. Lee J. DiCola (Trustee) was originally appointed as a co-trustee and is presently the sole trustee of the ADT. Brouse & McDowell (Brouse) is appointed counsel for the ADT.

Beginning in the fall of 1989, Brouse began to investigate the possibility of asserting preference actions against the Debtor's insiders, various contractors and a bonding company (Phase II Actions[1]) by the ADT on December 11, 1989, which consti-

based on an extension of the rationale of *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio)*, 874 F.2d 1186 (7th Cir. 1989). The *Deprizio* opinion was adopted by the Sixth Circuit in April, 1990 in *In re C–L Cartage Co., Inc.*, 899 F.2d 1490 (6th Cir.1990). Brouse received this court's permission to hire Alan Lepene and the law firm of Thompson, Hine & Flory of Cleveland, Ohio to conduct an independent investigation of the viability of the Phase II Actions. Attorney Lepene and his firm issued an opinion letter on May 17, 1990. While the opinion letter stated that "such an action on the facts of the present case would require an expansion of [the *Deprizio*] doctrine beyond the holding of any currently reported case," it concluded that the Phase II Actions "would be warranted." (Exhibit A to Brouse's Supplemental Memorandum)

Brouse then proceeded to develop its factual and legal bases for the Phase II Actions. Discussions were held with potential defendants and their counsel, but no litigation was commenced until 29 Phase II Actions were filed on October 10, 1991. Newmarket subsequently moved for an order directing the Trustee to abandon the Phase II Actions on the basis that they were of inconsequential benefit to the estate, when compared to the massive costs of litigating the Phase II Actions to conclusion. This motion to abandon was denied on December 20, 1991.

In January, 1992 the court heard motions for summary judgment filed by several of the Phase II Action defendants, urging the court to dismiss the complaints because they were time-barred under 11 U.S.C. § 546(a)(1).[2] Brouse had considered this possible defense prior to filing the Phase II Actions, but concluded that the two-year statute of limitations did not apply to the Trustee. After careful consideration and acknowledgement of a split of authority, this court found that § 546(a)(1) did apply and dismissed the Phase II Actions because

they were not commenced on or before May 20, 1990, which date marked two years after the Trustee's appointment. That order, issued February 6, 1992, was not appealed.

Beginning with the Fifth Application for Compensation in September, 1989, Brouse regularly submitted fee applications which included time spent on Phase II Actions. No objections were filed to the Fifth through Tenth Applications and the court did not make any reductions solely on the basis that the billing involved Phase II Actions. The Eleventh Application was filed March 6, 1992 after the Phase II Actions were dismissed. Newmarket filed its Objection on the grounds that the services involved in the Phase II Actions did not benefit the estate. It concurrently filed the Motion, requesting this court to take a second look at the fees awarded in the Fifth through Tenth Applications for Phase II Actions. At hearing on April 2, 1992, the court requested Brouse to calculate the portion of each fee award and the Eleventh Application currently pending which pertained to Phase II Actions. Brouse's summary reflects a total of $46,194.50 in allowed and requested fees concerning Phase II Actions. (Exhibit B to Brouse's Supplemental Memorandum) The court's independent review of the applications confirms that this figure is reasonably accurate.

## DISCUSSION

### A. *The Motion for Review*

■ The court will initially address Brouse's argument that this court has no authority to revisit the Fifth through Tenth Applications. Brouse claims that these awards are not interim, but are final, non-appealable awards. While the terms "Final Order" and "Final Judgment" are defined in the reorganization plan at Article 1.24, nowhere does the plan designate that com-

---

tuted "Phase I" of preference Litigation in this case.

**2.** An action or proceeding under section 544, 545, 547, 548, or 553 of this title [11 USCS § 544, 545, 547, 548, or 553] may not be commenced after the earlier of—

two years after the appointment of a trustee under section 702, 1104, 1163, 1302 of this title; ...

pensation awards fall under this definition. Article 2.02 merely provides that post-confirmation administrative expenses "shall be paid in full in Cash by the Trust as ordered by the Bankruptcy Court." Article XIII of the plan continues the court's retention of jurisdiction over all matters and disputes arising under the plan and ADT agreement. While the plan does not specifically refer to the approval of post-petition administrative expenses, the disclosure statement states "the Bankruptcy Court shall retain jurisdiction to determine all ... applications for allowance of compensation ..." at Article V.C. 3.

Brouse cites to Article 4.4 of the ADT agreement as the basis for its theory. While the Trustee is indeed given "sole and complete control and authority" over the trust assets, this control is properly "subject to the retained jurisdiction of the Bankruptcy Court." The Trustee may also pay "compensation or fees from Trust Assets, provided that all fees and expenses ... be approved by the Bankruptcy Court prior to payment." Nowhere in the plan, disclosure statement or ADT agreement is there a provision which would bar the court from reviewing prior fee awards. A review of the orders allowing compensation similarly shows no such limitation.

■ The periodic applications Brouse has made are thoroughly consistent with the concept of "interim" compensation as defined in 11 U.S.C. § 331. Brouse cites to *In re Spillane*, 884 F.2d 642 (1st Cir.1989) as authority for the proposition that fee awards which are not designated as interim must be treated as final. The *Spillane* court said nothing of the sort. It recognized that interim awards could be treated as "final" for appeal purposes when the applicants had completed their services in the case and the order conclusively determined the entire amount of compensation the applicants were entitled to receive. *Id.* at 644–45. The *Spillane* opinion actually undercuts Brouse's argument. The status of a fee award does not turn on whether it is designated as interim or final, but whether it represents a periodic payment contemplating further services and fee awards in

the future, or represents the totality of services rendered and a single concluding payment therefor. These applications clearly conform to requests for interim compensation and will be treated by this court accordingly.

This court has previously addressed its right to review a case at its conclusion and adjust prior interim awards accordingly based on "the nature and quality of services rendered ... which determinations can only be made, it would seem, with knowledge of the results obtained." *Matter of Pennsylvania Tire & Rubber Co.,* 19 B.R. 124, 125 (Bankr.N.D.Ohio 1980) While this case is not at its conclusion, the Phase II Actions have been terminated, enabling the court to review the corresponding fees with knowledge of the results obtained. Other courts have held that interim fee awards "are discretionary and are subject to reexamination during the course of the case...." *In re Alberto*, 121 B.R. 531, 534 (Bankr.N.D.Ill.1990); *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557 (Bankr.D.Utah 1985); *Cf. In re C & J Oil Co., Inc.,* 81 B.R. 398 (Bankr.W.D.Va.1987) (permissible for court to order refund of prior interim awards to prorate administrative expenses).

The court finds that Brouse's Fifth through Tenth Applications are not final for review purposes and that it has the jurisdiction and authority to make such review as requested by Newmarket in its Motion. Brouse's request for sanctions pursuant to Fed.R.Bankr.P. 9011 against Newmarket based on the filing of the Motion will be denied.

### B. The Objection to Compensation

■ 11 U.S.C. § 330(a)(1) contains the basic criteria a court must use in evaluating a fee application:

> [R]easonable compensation for actual necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than any case under this title;

This court has on several occasions stressed that the services must be evaluated in terms of reason, necessity and bene-

fit. *See In re Roger J. Au & Son, Inc.*, 114 B.R. 482 (Bankr.N.D.Ohio 1990); *In re Oakes*, 135 B.R. 511 (Bankr.N.D.Ohio 1991) "It is a well-settled legal maxim that in order for legal fees to be compensable the legal services rendered must have benefited the estate." *In re James Contracting Group, Inc.*, 120 B.R. 868 (Bankr.N.D.Ohio 1990) (White J.) Bankruptcy Judge Sellers of the Southern District of Ohio described the court's task thusly:

> [T]he result achieved has the greatest determinative weight. In this court's opinion, it is an evaluation of the time and effort expended in comparison with the results obtained which is the thrust of the analysis. While impressive results with little effort are to be rewarded generously, great amounts of time and energy with little result require much greater scrutiny.

*In re Hunt*, 124 B.R. 263, 266 (Bankr. S.D.Ohio 1990) In *In re Automobile Warranty Corp.*, 138 B.R. 72, 81 (Bankr. D.Colo.1991), the bankruptcy court found results achieved to be the "paramount consideration." With a particular eye toward large bankruptcy cases and the often-protracted litigation such cases produce, the court stated:

> Neither the size of the file nor the hours spent have a pervasive bearing on this aspect of the inquiry.... If results were not given primary emphasis then there would be a proclivity on the part of professionals to engage in unwarranted and protracted work with the expectation of being compensated no matter how ineffective or unwarranted the endeavor.

*Id.* at 81, *quoting In re Garnas*, 40 B.R. 140, 142 (Bankr.D.N.D.1984).

Brouse attempts to deflect the Objection by pointing out the overall results achieved to date through its representation of the ADT. Unfortunately for Brouse, the Objection focuses solely on the Phase II Actions. Brouse, as an experienced practitioner before this court, cannot plead ignorance of the fact that this court has in the

past segregated tasks, reviewed their reasonableness, necessity and benefit, and reduced the amounts requested accordingly. *See Au*, 114 B.R. 482.[3]

The court should not penalize an applicant solely because the efforts were not ultimately successful. *James*, 120 B.R. at 868 This court recognized in *Au, supra* that counsel should not feel constricted based upon risk of nonpayment, but cautioned the applicant as follows:

> As counsel for the debtor, [the firm] is under a duty to investigate and pursue every avenue which may inure to the debtor's benefit. But, the options and avenues chosen must, in some capacity, benefit the estate.

*Au*, 114 B.R. at 486; *See also Hunt*, 124 B.R. at 262–263 (court must balance time expended against result achieved, as well as likelihood of success on the merits at the time the services were performed). The court takes its own judgment, experience and discretion into account in evaluating the reasonableness of a fee request. *Matter of Environmental Waste Control*, 122 B.R. 341 (Bankr.N.D.Ind.1990).

Brouse was certainly aware of the risks involved in the Phase II Actions and, in representing the Trustee who was himself a fiduciary to the creditors, sought a second opinion as to their viability. That opinion, while concluding the Phase II Actions were warranted, made it clear that there was no direct legal precedent for what Brouse proposed, and that the Trustee's success depended on a rather broad expansion of present preference law. Mr. Lepene was not requested to address what proved to be the decisive issue: whether the actions were time barred under 11 U.S.C. § 546(a)(1). Moreover, it is unclear whether Brouse itself ever investigated the applicability of § 546(a)(1) to the Phase II Actions prior to May 20, 1990, the expiration of the two-year statute of limitations prescribed by that section. The first time description concerning § 546 as applied to the Phase II Actions comes nearly four

---

**3.** The *Au* opinion also involved a review of Brouse's fee applications as attorney for a Chapter 11 debtor.

months later, on September 11, 1990. Brouse then continued to work on the Phase II Actions for yet another 13 months before the complaints were filed. While it is not suggested that Brouse could have predicted this court's adverse decision, there was conflicting precedent on the issue, which Brouse should have been aware of when it elected to postpone the filing of the Phase II Actions.

What has resulted is the expenditure of hundreds of hours on a task which produced utterly no benefit to the estate and the creditors, in reliance upon legal theories which were unclear at best. While the court does not wish to entirely condemn Brouse for its efforts, neither can it agree that the prior and current fees are "reasonable" in view of the fact that to grant Brouse's request would deplete the estate by over $46,000.00 without producing *any* corresponding positives.

The court therefore will sustain the Objection to the Eleventh Application, and grant the Motion with respect to its request that Brouse refund portions of the Fifth through the Tenth Applications. The Phase II Actions fees will be reduced by 50%, or by $23,097.25. In consideration of the fact that the ADT has already disbursed to Brouse the prior fee awards, the court will not order disgorgement. The reduction will be taken in full from the Eleventh Application, which is for a total of $46,803.00 in fees and $3,640.29 in expenses. The remainder, in the amount of $23,705.75 in fees and $3,640.29 in expenses, will be allowed.

An order in accordance herewith shall issue.