In re ROGER J. AU & SON, INC.,

Cdeco Maritime Construction, Inc.,

Firelands Sewer & Water Construction Co., Inc., Confirmed Debtors.

Bankruptcy No. 683–00986.

United States Bankruptcy Court, N.D. Ohio.

Oct. 22, 1992.

Larry L. Inscore, Inscore, Rinehardt, Whitney & Enderle, Mansfield, OH, for applicant.

Edward R. Brown, Arter & Hadden, Cleveland, OH, for Aetna Cas. and Sur. Co.

Waldemar Wojcik, Trustee, Cleveland, OH.

MEMORANDUM OF DECISION RE:

COMPENSATION OF SPECIAL COUNSEL

JAMES H. WILLIAMS, Chief Judge.

Presented for consideration is the application of Larry L. Inscore and the law firm of Inscore, Rhinehart, Whitney, Enderle and DeWeese Co. (Inscore), special counsel for the debtor in possession (Debtor) in these consolidated proceedings filed under Chapter 11 of Title 11 of the United States Code.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

*FACTUAL BACKGROUND*

The Debtor sought approval of employment of Inscore on March 21, 1986, "[t]o prosecute a civil action on behalf of the [Debtor] for the benefit of this estate ... against Aetna Casualty & Surety Co...." Compensation was proposed to be paid at 40% of net proceeds after expenses in the event of a trial and 30% of such net proceeds if the matter was concluded without trial. Over the objection of the Aetna Casualty and Surety Company (Aetna), the retention of Inscore was approved by the court on June 17, 1986.

Much litigation, and time, passed, the detailed recounting of which would serve no purpose here. Suffice it to note that Inscore did pursue, with vigor, the Debtor's claims against Aetna; that Aetna fought back with at least equal fervor; that ultimately, Aetna was successful in gaining confirmation of the plan to which it contributed financially and which incorporated a so-called "global" settlement, designed to resolve all disputes in which the Debtor was involved, including the litigation Inscore was prosecuting on its behalf. Typical of this case, the matter did not end there, for an appeal of the court's confirmation order was taken to the United

States District Court. That court sustained the confirmation order, no further appeal was taken and the plan is now being consummated.

Now, says, Inscore, he is entitled to 30% of $150,000.00 in cash contributed to the plan by Aetna, as well as 30% of any of the net proceeds paid into the estate from recovery on a claim the Debtor held known as the Cuyahoga River claim. Funds recovered on this claim were another integral part of the plan which the court ultimately confirmed. In partial support of his position, Inscore offers, in some detail, a compilation of 155.7 hours of professional time he asserts were spent in pursuing his client's claim against Aetna. Additionally, he claims another 250 hours were expended "in other activities to maintain and enhance the viability of the claims set forth in the Adversary Case." Another 150 hours were spent, he says, resisting confirmation of the Aetna-sponsored plan. His customary hourly charge is asserted to be $125.00. He concludes that it is for "this court to decide the extent of the economic enhancement of Au, Inc.'s estate resulting from special counsel's services and the impact of 328(a)."

Aetna offered a four-pronged attack on Inscore's application for compensation:

1. There is a failure of proof that Aetna's funding of the plan "resulted directly" from Inscore's efforts in prosecuting the adversary case against Aetna on behalf of the Debtor.

2. Even if Inscore had something to do with Aetna's financial contribution, the added cost of administration of the estate resulting from Inscore's litigation activities must be taken into account.

3. There is a failure of compliance with Fed.R.Bankr.P. 2016 relative to previous payments to the special counsel.

4. The application fails to conform with various aspects of this court's 1988 Guidelines for compensation of professional persons.

### DISCUSSION

The court considers only the first of Aetna's objections as meriting close examination.[1] The added costs of administration resulting from what Aetna perceives as Inscore's interference with the case are nearly impossible to quantify, beyond the efforts already made by the court to reduce duplicate charges for work rendered by Brouse & McDowell, the Debtor's general counsel, in areas in which Inscore functioned. As Inscore points out, explanation was offered at the oral hearing on his compensation request as to payments received by him for his work, which explanation, coupled with the declaration accompanying the initial application to employ him and his firm as special counsel, the court accepts. The 1988 Guidelines obviously came into being long after Inscore's appointment as special counsel and, in any case, have no direct application to a contingent fee arrangement. Inscore offers evidence of several hundred hours of his professional time spent on behalf of the Debtor to buttress his view that the fees calculated under the percentage arrangement are not unreasonable. In such usage, lack of rigid adherence to the Guidelines does not warrant a rejection of the application for compensation.

As noted, Aetna's first, and in the court's mind, most compelling argument is that there is a failure to demonstrate that Aetna's contributions to the plan "directly resulted" from Inscore's efforts.

While the court is aware of criticism of the concept, it has long held to the view that results obtained or, in other words, benefits to the estate, are a crucial factor in fixing the compensation of professionals. *See In re Gibbons–Grable Company*, 141 B.R. 614, 617-8 (Bankr.N.D.Ohio 1992) and

---

1. Aetna later submitted a lengthy attack on Inscore's *right to compensation because of certain* undisclosed involvements Inscore had with entities related to the Debtor corporation. Inscore responded that Aetna had long known of these alleged conflicts and had kept silent; that no demonstrable harm had come to the estate because of these connections; and the court, in any case, had approved Inscore's appointment under 11 U.S.C. § 327(e) which contains no "disinterested" requirement. The court agrees that the frailties of Inscore's position, if any, are addressed by Aetna's four-part objection discussed here.

the cases there cited, including, interestingly, the report of an earlier skirmish in this very case, *In re Roger J. Au & Son, Inc.*, 114 B.R. 482 (Bankr.N.D.Ohio 1990).

Much more difficult than stating the concept is applying it practically, however. It is one thing to look at a fee bill and sort out specific actions which can be tied to particular results, e.g., recovery of a sum of money for the estate from the prosecution of a preference action, and quite another to look, as here, at a fund of money contributed for, probably, several reasons and conclude that any one professional or group of professionals "caused" or "created" that fund, in whole or in some percentage. One can understand if not appreciate Inscore's suggestion that the final calculation is the court's job!

If one is to apply the 30% contingency fee calculations to the funds contributed to the plan by Aetna, Inscore is entitled to $104,022.00 (30% × $150,000.00 in cash, plus $196,740.00 from the Cuyahoga River claim). This is in contrast to an allowance of $69,462.50 if all of the time specified by Inscore (155.7 hours itemized, 250 hours estimated for "other activity" and, of highly dubious value, 150 hours in resisting, unsuccessfully, confirmation of the plan) is allowed at $125.00 per hour.

The court is satisfied that the efforts of Inscore are reflected at least to some extent in the ultimate contributions Aetna made to this plan. It is not prepared, however, to accept the applicant's view that his efforts, alone, compelled Aetna to so act. It appears that no more than 400 to 500 hours were spent in productive effort to enhance the estate.[2] It would be, of course, unfair to, in retrospect, deny allowance based on a contingent fee arrangement because the applicant is unable to reconstruct time records which will support an award calculated under the contingency fee agreement. Part of the justification for high awards under the contingent fee system is to recognize the risk factor in undertaking representation on such a basis.

Although the supporting documentation is woefully lacking, the court will accept Inscore's assertion that at least 500 hours of his professional time were expended in the effort under discussion here. To the product of this number of hours multiplied by $125.00, it will add a factor of 25% in order to give effect to the contingency arrangement which the parties bargained for, and which the court approved, several years ago. The result is $78,125.00 which shall be paid over to Inscore as a part of the cost of administration of this estate.

An order in accordance herewith shall issue forthwith.

---

**2.** Not including the 150 hours Inscore allegedly spent in attempting to derail the Aetna-sponsored plan which ultimately provided the framework for the payments in which he now seeks to share.